550 So.2d 1386 (1989)
Lydia K. Beckendorf, wife of/and Raymond H. DELAUNE
v.
The CITY OF KENNER, the State of Louisiana Through the Department of Natural Resources, and the Board of Commissioners of the Jefferson Levee District.
No. 89-CA-187.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1989.
Writ Denied December 8, 1989.
Michael J. Power, Ansardi, Maxwell & Power, Kenner, T. Robert Lacour, Kenner, Bruce G. Reed, New Orleans, for defendant-appellant.
Keary L. Everitt, Metairie, for plaintiffs-appellees.
*1387 Before GAUDIN, GRISBAUM and DUFRESNE, JJ.
GRISBAUM, Judge.
The Board of Commissioners of the Jefferson Levee District and the City of Kenner are appealing a judgment recognizing Mr. Raymond H. Delaune, appellee, as the owner of a certain tract of land. We set aside and reverse the judgment of the trial court.
ISSUE
The sole issue presented is whether the State of Louisiana acquired fee simple ownership or a servitude over the plaintiffs-appellees' property by judgment in 1960.
BASIC FACTS AND PROCEDURAL HISTORY
In 1946, by act of sale, Mr. Delaune and his wife purchased two tracts of land fronting on Lake Pontchartrain. On March 24, 1949, the Board of Commissioners of the Pontchartrain Levee District, the predecessor of the Board of Commissioners of the Jefferson Levee District, adopted a resolution appropriating all of plaintiffs' property on Lake Pontchartrain for the purpose of building a levee. The property was subsequently taken and the levee constructed. Thereafter, plaintiffs filed suit against the Board of Commissioners, who filed exceptions of no cause of action, which were maintained by the trial court, but reversed by the Louisiana Supreme Court, which, in part held:
[I]n order to ascertain whether a particular property appropriated for levee purposes is subject to a servitude, it is essential to trace the title to the original grant when the land itself does not actually front on ... [a navigable] stream [or river]. If that grant shows that the tract was riparian property when separated from the public domain, then the next question to be determined ... is whether the property taken "is within range of the reasonable necessities of the situation, as produced by the forces of nature, unaided by artificial causes". [sic] These are purely questions of fact which are determinable by a trial on the merits and not on an exception of no cause of action.
Delaune v. Bd. of Comm'r, 230 La. 117, 87 So.2d 749, 754 (1956).
On remand, the trial court found that the plaintiffs' land was nonriparian and, therefore, not subject to public servitude and the plaintiffs were awarded the fair market value of the property taken plus interest and received $7,227.87, "in full satisfaction of the judgment." The property was subsequently removed from the tax rolls. The record shows Mr. Delaune states he filed suit against the assessor of Jefferson Parish in 1982 to have the property placed on the tax rolls, which suit has been continued pending the outcome of these proceedings.
On March 12, 1981, the City of Kenner entered into a recorded lease agreement with the State of Louisiana through the Department of Natural Resources encompassing the property claimed by the plaintiffs. The City of Kenner then constructed a marina, concession stands, and parking lots on the property.
Thereafter, plaintiffs filed the present suit in 1987, and the City of Kenner and the State of Louisiana filed a motion for summary judgment and the peremptory exceptions of nonjoinder of an indispensable party and no right of action. The trial court dismissed the defendants' motion for summary judgment and peremptory exception of no right of action, but it maintained the exception of nonjoinder of an indispensable party and joined the Board of Commissioners for the East Jefferson Levee District as a party. Trial on the merits was held during September 1988, and, on October 31, 1988, the trial court rendered judgment in favor of the plaintiffs and assigned Reasons as follows:
Counsel for all parties entered into a stipulation in this matter which included, inter alia, the entire record from the 23rd Judicial District for the Parish of St. James, State of Louisiana, in the case entitled Raymond H. Delaune and Mrs. Lydia D. Beckendorf, wife of Raymond *1388 H. Delaune versus the Board of Commissioners for the Pontchartrain Levee District, number 7843 of that court. Careful reading of this Judgment leads to the inescapable conclusion that nowhere does the Judgment recite that title to the property in question was transferred to the Pontchartrain Levee District. Indeed, the stipulation of Counsel referred to in that said record clearly shows the property of the plaintiffs was appropriated for levee purposes. As was pointed out by the Louisiana Supreme Court in Richardson and Bass versus Board of Levee Commissioners of the Orleans Levee District, 226 LA [sic] 761, 77 So 2d [sic] 32, the appropriation of land by a Levee Board for levee purposes does not convey title to the Board of that property.
The record in the instant case clearly shows the levee constructed on plaintiffs' property follows the right-of-way of the old New Orleans Hammond Highway and does not utilize all of plaintiffs' property. It is the property lying north of the existing levee that is being used by the City of Kenner in conjunction with the operation of a boat launch and not for levee purposes.
The City of Kenner has attempted to show this property was once inundated by the waters of Lake Pontchartrain. However, the Court feels this fact has not been established. As part of the stipulation referred to earlier, the parties also stipulated the entire record in the case of Gaudet versus the City of Kenner, et al bearing docket number 279-392, Division E of the Twenty-Fourth Judicial District Court which decision is found in [La.App.] 487 So 2d [sic] 446, writ denied [La.,] 493 So 2d [sic] 638. Although the decision in the Gaudet case cannot be considered res judicata with respect to issues involved herein because this case involves different defendants, nevertheless a careful reading of the case shows that the evidence clearly preponderates in favor of plaintiffs' position that their land lying north of the existing levee was not inundated by the waters of Lake Pontchartrain.
Since the Pontchartrain Levee District acquired only a servitude over plaintiffs' property, they are entitled to be recognized as the owners of that property burdened by a servitude for levee purposes of that portion of the property actually used for said levee. The land used by the Pontchartrain Levee District for the construction of this levee does not include that property owned by plaintiffs lying north of the said levee right-of-way. Article 760 of the Louisiana Civil Code provides:
"A more extensive use of the servitude than that granted by the title does not result in the acquisition of additional rights for the dominant estate unless it be by acquisitive prescription."
Accordingly, the use by the City of Kenner under its lease from the State of Louisiana of plaintiffs' property for purposes of operating a marina is clearly a more extensive use of plaintiffs' property than for levee purposes. In view of the absence of any deed translative of title, this Court finds that the plaintiffs are the owners of the property described in their petition which property is burdened by a servitude for levee purposes only and any other use of plaintiffs' property is clearly not authorized.
ANALYSIS
La.Const. art. XVI, § 6 (1921) provides: "Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes ... shall be paid for at a price not to exceed the assessed value of the preceding year...."
La.C.C. art. 665 provides:
Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.

*1389 All that relates to this kind of servitude is determined by laws or particular regulations.
Jurisprudentially we note that, in 1949, the measure of compensation for land appropriated was fixed at the assessed value of the land and improvements, which was generally far below fair market value and was not just compensation as that term was understood in the law of eminent domain. Wolfe, 40 Tul.L.R. 233, 254 (1966). See Wolfe v. Hurley, 46 F.2d 515 (W.D.La. 1930).
However, in 1949, the plaintiffs in the instant case contested the State's power of appropriation. The supreme court in that case held that, in order for a parcel of land to be subject to a C.C. art. 665 servitude, it must have been riparian property when separated from the public domain and it must be within the range of the reasonable necessities of the situation, as produced by the forces of nature, unaided by artificial causes. Delaune v. Bd. of Comm'r, supra, 87 So.2d at 754. The constitutional justification for the power of appropriation rested on the theory that the State and its sovereign predecessors in title have never granted a perfect title in any riparian lands to any private person since the settlement of Louisiana. Consequently, when the State exercises its levee servitude rights with respect to such lands, there is no "taking" within the meaning of the constitutional guarantees concerning eminent domain because the State thereby merely resumes possession of what it always owned. Wolfe, 40 Tul.L.R. 233, 267 (1966). From these principles we determine that land which is not subject to appropriation is a "taking" within the traditional meaning of the federal constitution. While appropriation of land does not vest title in the State, expropriation of land does.
On remand, the trial court ruled in favor of the plaintiffs and awarded the full market value of the property, citing the Roy, Weiss, and Delaune cases, all of which ruled that nonriparian land could not be appropriated by the State. The trial court in rendering judgment made no mention of title to the property.
The Reasons for Judgment reflect that
The issues of law and of fact are largely reserved by the stipulation of the parties, which is made a part of these reasons. The engineering testimony in the case of A. K. Roy, Inc. vs. The Board of Commissioners for the Pontchartrain Levee District, infra, is, under this stipulation, governing in this case; and insofar as the legal issues are concerned, the Supreme Court's decisions in the cases of A. K. Roy, Inc. vs. The Board of Commissioners for the Pontchartrain Levee District, 237 La. 541, 111 So.2d 765; [238 La. 926] 117 So.2d 60; Weiss, et al vs. The Board of Commissioners for the Pontchartrain Levee District, [underlining omitted as in original] 238 La. 419, 115 So.2d 804; and the instant case itself, on a former stage of proceedings in the Supreme Court, Delaune vs. The Board of Commissioners for the Pontchartrain Levee District, 230 La. 172[117], 87 So.2d 749, are governing. The only remaining issue of fact is as to the market value of the property taken as of the dates on which it was taken.
As to the value of the land taken, the two appraisals offered in evidence, one by Mr. E. Holland Johnson and the other by Mr. Charles J. Derbes, Jr., are very comprehensive upon all points, despite variations in their conclusions. Mr. Derbes concluded that lands in the Williams Boulevard area had a value in March of 1949 of thirty dollars per front foot on each side of the highway; while Mr. Johnson concluded that lands on the south or land side were then worth twenty dollars per front foot, and lands on the north or Lake side were then worth ten dollars per front foot. The land involved in this matter formed the corner of the Highway and Williams Boulevard; and as Mr. Johnson's report points out, a corner tract has a greater value than an *1390 inside tract, and Mr. Johnson cites the fact that the Bonura tract on the corner of Elise Avenue brought ten dollars more per front foot, which he attributes to the "corner influence". [sic]
Considering all of the relevant facts, the Court is fixing a price of Four Thousand Five Hundred and no/100 Dollars ($4,500.00) as the actual market value of Plaintiff's property as of March, 1949, the date of the taking. Of course, this amount is to carry interest at five per cent (5%) per annum from the date of the taking until paid, as is expressly recognized in the Roy case, supra.
We see that, in the Reasons for Judgment dated June 20, 1960, the trial court repeatedly refers to the value of the land taken, not the value of a servitude taken. In particular we note that, as has been recognized by our jurisprudence in La. Land & Exploration Co. v. Parish of Jefferson, 59 F.Supp. 260, 265 (E.D.La.1945),
The term "land" has a definite meaning in the law as well as in the popular minda meaning as settled and firm as the thing that it represents. "Land", [sic] to lawyer and layman alike, means the soil, the solum, terra firma, a section of Mother Earth. No argument, however ingenious, can budge this stubborn fact.
There is no evidence to indicate that the trial court did not use the word land in its ordinary signification or that it intended in reality to award the State only a servitude over the land. Id. at 266. Furthermore, the mere absence of emphatic words such as,
"recognizing [the defendant] as having the full ownership of the following described property...."
... in the act of transfer does not of itself affect the nature of the transfer if its terms are otherwise clear.
... Those words "merely emphasized" that the fee simple "was granted, whereas, both in fact and in law, no such emphasis was necessary. The emphasis * * * in this case was accomplished by" the iteration of the word "land" to designate the res expropriated by the judgments, and by the complete absence from their granting clauses of the term "right of way", [sic] "servitude", [sic] "easement", [sic] or any other equivalent word or phrase.
Id. at 267. We agree.
In 1949, the plaintiffs claimed that their land was not subject to appropriation and was, therefore, "taken" within the meaning of the constitution. Now, 14 years later, the plaintiffs are attempting to secure additional compensation for the same property, claiming their land was in fact appropriated. The State has already paid the full market value for the land it took from the plaintiffs in 1949, including the land that the plaintiffs now claim. "It is not only a moral principle but it is also a legal principle that if a person pays the full value for property, the property should be his." Parish of Jefferson v. Texas Co., 192 La. 934, 189 So. 580, 589 (1939). As stated by the court State, Dep't of Transp. and Dev. v. Hecker, 493 So.2d 125, 128 (La.App. 5th Cir.1986), writs denied, 494 So.2d 325 (La. 1986), quoting from State Dep't of Highways v. Bitterwolf, 415 So.2d 196, 198 (La. 1982):
"... An owner cannot recover more than compensation to the full extent of his loss for property taken or damaged by the state. Although the constitutional right to property does not prohibit the state from compensating an owner for more than the full extent of his loss, it has never been the aim of our implemental legislative and jurisprudential precepts to require anything more than just compensation for the owner's loss. La. R.S. 48:453, which was amended to incorporate these precepts and the constitutional principle of just compensation, is designed to compensate an owner only to the full extent of his loss."
Therefore, recognizing our statutory law and our jurisprudential mandates and guidelines, we find the plaintiffs should be estopped from relitigating the issue of appropriation *1391 versus expropriation. We likewise conclude that, since a "fee" and not a servitude has been acquired, the former owners retain no rights whatsoever. Ergo, the title is not impaired nor does it revert to the former owners.
For the reasons assigned, the judgment of the trial court dated October 31, 1988 is hereby reversed and set aside. All costs of this appeal are to be paid by the appellees.
SET ASIDE AND REVERSED