# Supreme Court of Louisiana

The Opinions handed down on the **31st day of March, 2017**, are as follows:

**BY CLARK, J.:**

2016-C-0788       SOUTH LAFOURCHE LEVEE DISTRICT v. CHAD M. JARREAU, ET AL. (Parish
    C/W           of Lafourche)
2016-C-0904
                  Judge James T. Genovese, assigned as Justice ad hoc, sitting for
                  Knoll, J., for oral argument.  He now sits as an elected Justice
                  at the time this opinion is rendered.

                  Retired Judge James L. Cannella assigned as Justice pro tempore,
                  sitting for Guidry, J., who was recused.

                  Accordingly, for the above reasons, the judgment of the court of
                  appeal is reversed, in part, insofar as it awarded Jarreau and
                  Bayou Construction attorneys' fees of $142,551.50.  All other
                  portions of the court of appeal judgment are affirmed.  We hereby
                  render judgment in favor of Jarreau and Bayou Construction and
                  against the Levee District for attorneys' fees in the amount of
                  $2,635.57.
                  AFFIRMED IN PART; REVERSED IN PART AND RENDERED.

                  WEIMER, J., additionally concurs and assigns reasons.
                  HUGHES, J., dissents with reasons.
                  CANNELLA, J., additionally concurs with the reasons of Justice
                  Weimer.

SUPREME COURT OF LOUISIANA

No. 2016-C-0788

CONSOLIDATED WITH

No. 2016-C-0904

SOUTH LAFOURCHE LEVEE DISTRICT

VERSUS

CHAD M. JARREAU, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF LAFOURCHE

**CLARK, Justice**\* \*\*

Following Hurricanes Katrina and Rita, the Louisiana legislature in 2006 passed Act 853[1] and Act 567[2], which amended the laws governing compensation for levee servitude appropriations with a particular focus on appropriations for use in hurricane protection projects. We granted certiorari in this *res nova* matter for three purposes: 1) to interpret specific provisions of the 2006 amendments to La. Const. art. I, § 4, La. Const. art. VI, § 42, and La. R.S. 38:281(3) and (4); 2) to determine the amount of compensation that is due a property owner whose

---

[1] Acts 2006, No. 853, effective October 31, 2006, among other things, amended La. Const. art. I, § 4 to add § 4(G), and also amended La. Const. art. VI, § 42(A) to limit compensation for the appropriation of property for levee purposes to the amount required by the Fifth Amendment to the United States Constitution.

[2] Acts 2006, No.567, effective October 31, 2006, among other things, amended La. R.S. 38:281(3) and (4) and enacted La. R.S. 38:249 and La. R.S. 49:213.10(D) to tie the definitions of "fair market value" and "full extent of the loss" to La. Const. art. I, § 4(G), thereby limiting compensation for appropriations of property for hurricane protection projects to that required by the Fifth Amendment to the United States Constitution. Louisiana R.S. 38:249 and La. R.S. 49:213.10(D) were later repealed by Acts 2009, No. 523, § 7 and § 8, respectively, effective July 10, 2009. The substance of former La. R.S. 49:213.10(D) is now found in La. R.S. 49:214.5.6, which was added by Acts 2009, No. 523, § 3, effective July 10, 2009, and provides for "[m]easure of compensation; property taken for public purposes; venue."

---

\*Judge James T. Genovese, assigned as Justice ad hoc, sitting for Knoll, J., for oral argument. He now sits as an elected Justice at the time this opinion is rendered.

\*\*Retired Judge James L. Cannella assigned as Justice pro tempore, sitting for Guidry, J., who was recused.

property is appropriated by a levee district pursuant to a permanent levee servitude for use in a hurricane protection project; and 3) to determine whether La. R.S. 38:301(C)(2)(f) or La. R.S. 13:5111 governs an award for attorneys' fees in a levee servitude appropriation dispute.[3]

For the reasons that follow, we conclude the 2006 amendments to La. Const. art. I, § 4, La. Const. art. VI, § 42 and 38:281(3) and (4) reduced, rather than eliminated, the measure of damages to be paid to a property owner for the taking of, or loss or damage to, property rights for the construction, enlargement, improvement, or modification of hurricane protection projects from "full extent of the loss" to the more restrictive "just compensation" measure required by the Fifth Amendment to the United States Constitution, which is the fair market value of the property at the time of the appropriation, based on the current use of the property, before the proposed appropriated use, and without allowing for any change in value caused by levee construction. We further hold that La. R.S. 38:301(C)(2)(f) governs an award for attorneys' fees in a levee appropriation dispute. Thus, we affirm the court of appeal judgment, in part, reverse, in part, and render.

## FACTS AND PROCEDURAL HISTORY

On January 10, 2011, the Board of Commissioners of the South Lafourche Levee District ("Levee District') adopted Resolution 11-01 (the "Resolution"), appropriating a permanent levee servitude affecting certain tracts of land located on the west bank of Bayou Lafourche, an area the Levee District had determined was susceptible to storm surge and flooding. The express purpose of the appropriation was to upgrade and increase the size of the existing permanent levee

---

[3]*South Lafourche Levee District v. Jarreau*, 2016-0904 (La. 9/6/16), 204 So. 3d 998 and *South Lafourche Levee District v. Jarreau*, 2016-0788 (La. 9/6/16), 205 So. 3d 919.

servitude for flood protection in the Larose to Golden Meadow, Louisiana, Hurricane Protection Levee Project area. The Resolution gave the Levee District the right to "construct, operate and maintain levees, berms, drainage or borrow canals or ditches and other flood control works including the right to cut away, dredge or remove soil or earth therefrom and for the deposit of same as may be necessary[.]"

Landowners that were affected by the appropriation of the permanent servitude were notified by letter dated the same date the Resolution was passed. In the letter, the Levee District advised the landowners that soon it would begin "removing earthen material" from the appropriated property and demanded that they "immediately cease and desist performing any and all activities upon the property as appropriated." The letter further explained that state law required the Levee District to pay each affected landowner the fair market value for the appropriated property.

Chad M. Jarreau, a Lafourche Parish resident who owns a 17.1 acre tract of land ("Jarreau tract") located partially within the appropriated area, received the letter. Jarreau's home is situated on the front portion of the tract near Highway 3235, and he operates Bayou Construction & Trucking Co., L.L.C. ("Bayou Construction"), a dirt excavation and hauling business, over the remainder of the tract. Only the rear portion of the Jarreau tract, which measures .913 acres and backs up to a canal, was within the Levee District's appropriated permanent servitude.

Despite receiving the letter, Jarreau continued to excavate dirt from the appropriated area to satisfy contractual obligations for Bayou Construction. On May 19, 2011, the Levee District filed a petition to enjoin Jarreau from excavating

and removing any more dirt from the appropriated servitude and sought monetary damages for the "wrongful" excavation. Shortly thereafter, Jarreau received a check from the Levee District in the amount of $1,326.69 as compensation for the full market value of appropriated property; he rejected the tender. In response to the Levee District's petition, Jarreau filed an answer and reconventional demand, seeking compensation for the appropriated land, severance damages to the land, buildings, and improvements; economic and business losses; and general damages for mental anguish, loss of use, inconvenience, and loss of enjoyment; costs and statutory attorney fees. Bayou Construction later intervened in the suit as a plaintiff-in-reconvention, seeking compensation for lost profits, legal interest, and costs arising from the appropriation.

Jarreau eventually stipulated to the Levee District's request for a permanent injunction, and with his consent, the trial court entered an order prohibiting him from removing dirt "from the property subject to the Levee Servitude appropriated by way of [the Levee District's resolution]." Following a bench trial on the remaining issues, the trial court rendered a judgment awarding the Levee District damages of $16,956.00 for the dirt excavated from the appropriated property. The trial court awarded Jarreau $11,869.00 as just compensation for the appropriated tract pursuant to La. R.S. 38:301(C)(1)(a)[4] and Jarreau and Bayou Construction, *in globo*, $164,705.40 for economic and business losses, as well as attorneys' fees pursuant to La. R.S. 38:301(C)(2)(f) in the amount of $43,811.85, expert witness fees of $26,490.95, costs of $2,350.00 and interest.

---

[4] The trial court gave the Levee District credit for the $1,326.99 it previously tendered to Jarreau, for a total award of $10,542.01 for the Jarreau tract.

The Levee District appealed, asserting for the first time that the 2006 amendments that added § 4(G) to La. Const. I and amended art. VI, § 42(A) eliminated a property owner's right to compensation whenever property is taken for hurricane protection projects. Alternatively, the Levee District argued the 2006 amendments prohibited the trial court from including economic and business losses in an award for just compensation for property appropriated for hurricane protection levees. See La. R.S. 38:281(3) and (4). Jarreau and Bayou Construction answered the appeal, seeking reversal of the wrongful excavation award and an increase in attorneys' fees.

On appeal, the First Circuit, noting the 2006 amendments were never considered at trial, found the lower court erred, as a matter of law, in awarding Jarreau and Bayou Construction economic and business losses. *South Lafourche Levee District v. Jarreau*, 2015-0328, p. 15 (La. App. 1 Cir. 3/31/16), 192 So. 3d 214, 226 & n.4. (2016). It then reviewed the record *de novo*, in light of the 2006 amendments, and determined the Levee District's use of dirt from the Jarreau tract was a constitutional "taking" that required just compensation at fair market value.[5] *Id.,* 2015-0328 at 14, 192 So. 3d at 225. Based on the evidence, the court found the fair market value of the property at the time of appropriation was $11,869.00. *Id*., 2015-0328 at 17, 192 So. 3d at 228. The court of appeal reversed the portion of the judgment awarding Jarreau and Bayou Construction $164,705.40 in damages for economic and business losses associated with the appropriation. *Id*.,

_____

[5] Judge Crain disagreed with the majority's interpretation of the 2006 amendments that landowners are owed no compensation for the State's appropriation of their land for levee purposes, unless the appropriation is also a constitutional taking. He interpreted the amendments as simply changing the measure of damages from "full extent of the loss" to the more restrictive "just compensation" required by the Fifth Amendment. See *Jarreau*, 2015-0328, 192 So. 3d 241, 234-35 (Crain, J., concurring in part).

5

2015-0328 at 18, 192 So. 3d at 228.  The court of appeal also reversed the award of $16,956.00 to the Levee District for Jarreau's wrongful excavation of the dirt, finding the evidence insufficient to support the loss.[6]  *Id.*, 2015-0328 at 23, 192 So. 3d at 232.

Last, the court of appeal found the trial court erred in applying the 25% cap on attorneys' fees award under La. R.S. 38:301(C)(2)(f) rather than awarding reasonable attorneys' fees actually incurred under La. R.S. 13:5111(A).  *Jarreau*, 2015-0328 at 24, 192 So. 3d at 232.  A majority of the court of appeal held that La. R.S. 13:5111(A) was the more specific statute.[7]  *Id.*  Utilizing factors established by this Court,[8] the court of appeal concluded that $142,551.50 was a reasonable amount for attorney fees actually incurred and added $5,000 for the appellate work.  *Id.*, 2015-0328 at 25-26, 192 So. 3d at 233.

The Levee Board and Jarreau and Bayou Construction filed these consolidated writs seeking our review of the court of appeal's judgment.  The Levee Board raises two assignments of error: 1) the court of appeal erred by concluding the Levee District owes any compensation for the appropriation of the levee servitude, given the 2006 amendments; and 2) the court of appeal erred in awarding attorney's fees based on La. R.S. 13:5111 rather than La. R.S.

---

[6] The Levee District did not seek review of the part of court of appeal judgment reversing the damage award for Jarreau's wrongful excavation of dirt from the appropriated property.

[7] Judges Guidry and Crain dissented, finding R.S. 38:301(C)(2)(f) was applicable as the more specific statute for awarding attorneys' fees in an appropriation for levee purposes.  See *Jarreau*, 2015-0328, 192 So. 3d 214, 234-35 (Guidry, J., dissenting in part and Crain, J., dissenting in part).

[8] See *State, Dep't of Transp. And Development v. Williamson*, 597 So.2d 439, 442 (La. 1992) (determining the reasonableness of attorneys' fees award include: (1) ultimate result obtained; (2) responsibility incurred; (3) importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) court's own knowledge).

38:301(C)(2)(f). Jarreau and Bayou Construction, on the other hand, argue the court of appeal erred in determining the fair market value of the property and reversing the trial court's award of $164,705.40 for the value of the appropriated dirt.

## LAW AND DISCUSSION

"Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent." *Pierce Foundations, Inc. v. JaRoy Construction, Inc.*, 2015-0785, p. 6 (La. 5/3/16), 190 So. 3d 298, 303 (citations omitted). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the legislative intent. La. Civ. Code art. 9; La. Rev. Stat. 1:4; *Succession of Boyter*, 99-0761, p. 9 (La. 1/7/00), 756 So. 2d 1122, 1128-29. However, when a statute is susceptible of more than one interpretation, the court must apply the one that achieves the legislature's intent and best comports with the principles of reason and justice. *Pierce Foundations,* 2015-0785 at 7, 190 So. 3d at 303; *Freechou v. Thomas W. Hooley, Inc.*, 383 So. 2d 337 (La. 1980). "The starting point for interpretation of any statute is the language itself." *Pierce Foundations,* 2015-0785 at 7, 190 So. 3d at 303 (citations omitted). Also, "'all laws pertaining to the same subject matter must be interpreted *in pari materia*, or in reference to each other.'" *Id.*, quoting *State v. Williams*, 10-1514 (La. 3/15/11), 60 So. 3d 1189, 1191; La. Civ. Code art. 13.

A helpful guide in ascertaining the intent of the legislature is the legislative history of the statute and related legislation. *Theriot v. Midland Risk Ins. Co.*, 95-2895, p. 4 (La. 5/20/97), 694 So. 2d 184, 186. The Legislature is presumed to have

7

enacted a statute in light of the preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law. *Fontenot v. Reddell Vidrine Water* Dist., 2002-0439, 2002-0442, 2002-0478, pp.13-14 (La. 1/14/03), 836 So. 2d 14, 24 (citing *Folse v. Folse*, 98–1976 (La. 6/29/99), 738 So.2d 1040 and *New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans,* 94–2223 (La. 4/10/95), 653 So.2d 538).

Furthermore, where two statutes deal with the same subject matter, they should be harmonized if possible, as it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws. *Oubre v. Louisiana Citizens Fair Plan,* 2011–0097 (La.12/16/11), 79 So.3d 987, 997, *cert. denied,* —— U.S. ——, 133 S.Ct. 30, 183 L.Ed.2d 677 (2012). However, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. *Id.*

Whether Jarreau is owed compensation for property appropriated for hurricane protection purposes pursuant to La. R.S. 38:301, in light of the 2006 amendments to La. Const. art. I, § 4, La. Const. VI, § 42, and La. R.S. 38:281 (3) and (4), presents only a question of law; therefore, our review is *de novo*. See *Pierce Foundations,* 2015-0785 at 7, 190 So. 3d at 303.

We turn now to language of the constitutional and statutory provisions at issue.

*2006 Amendments*

The limitations placed upon governmental takings of property are found in both the federal and state constitutions. The Fifth Amendment of the United States Constitution, made applicable to the states pursuant to the Fourteenth Amendment,

8

provides: "No person shall ... be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation." The definition of "just compensation" required by the Fifth Amendment has repeatedly been held to be measured by "the market value of the property at the time of the taking." *Horne v. Department of Agriculture,* –––– U.S. – –––, ––––, 135 S.Ct. 2419, 2432, 192 L.Ed.2d 388 (2015) (quoting *United States v. 50 Acres of Land,* 469 U.S. 24, 29, 105 S.Ct. 451, 454, 83 L.Ed.2d 376 (1984)).

The Louisiana Constitution of 1974 provides for governmental takings of property in both article I, § 4, "Right to Property," and article VI, § 42, "Compensation for Property Used or Destroyed; Tax." Article I, § 4 provides for the expropriation of private property for public purposes while article VI, § 42 provides specifically for the appropriation of private property necessary for levee or levee drainage purposes. The difference between a Louisiana landowner's protection against "appropriation of property necessary for levee and levee drainage purposes," which is excepted from the protections of article I, § 4, and expropriation for any lawful purpose, arises from the particular nature of the levee servitude and the way in which it was traditionally exercised by public bodies:

> The ownership of the lands used or destroyed for levee purposes remained in the riparian landowner, because the lands were not 'expropriated' but merely 'appropriated' for levee construction and the payment (authorized under the Constitution of 1921) was an indemnity for the public use.

Yiannopoulus, *Civil Law Treatise (Property),* V. 2, Section 88, P. 190 (3d ed. 1991). Appropriation, as opposed to expropriation, is carried out by a resolution of the appropriating authority, without the need for a judicial proceeding. See *Richardson & Bass v. Board of Levee Commissioners,* 226 La. 761, 77 So.2d 32

9

(1954). Furthermore, "[a]ppropriation involves the taking of a servitude, whereas expropriation may involve the taking of ownership." Yiannopoulus, *supra,* at 190 n. 20. See also *Delaune v. City of Kenner,* 550 So.2d 1386 (La. App. 5 Cir.1989), *writ denied,* 553 So.2d 475 (La.1989). While compensation is mandated by the U.S. Fifth Amendment for expropriations, no compensation is required for levee appropriations. See *Eldridge v. Trezevant*, 160 U.S. 452, 16 S.Ct. 345 (1896).

Prior to the effective date of the 2006 amendments, article I, § 4(B) provided:

> Property shall not be taken or damaged by the state or its political subdivisions *except for public purposes and with just compensation* paid to the owner or into court for his benefit. … In every expropriation, a party has the right to trial by jury to determine compensation, and *the owner shall be compensated to the full extent of his loss.*" (Emphasis added.)

The phrase "compensated to the full extent of his loss" was a change in the law when it was added to the 1974 Constitution. It broadened the measure of damages in expropriation cases by requiring that an owner be compensated not only for the fair market value of the property taken and severance damages to the remainder, but also to be placed in an equivalent financial position to that which he enjoyed before the taking. See *West Jefferson Levee District,* 93-1718, p. 13, 640 So.2d 1258, 1271 n.20. Full compensation pursuant to the 1974 Constitution included things like inconvenience and loss of profits from the takings of business premises so that landowners were compensated for their loss, not merely the loss of their land. *Id.*

In 2006, Act 853 amended La. Const. article I, § 4 to add § 4(G) to provide:

> (G) Compensation paid for *the taking of, or loss or damage to, property rights for the construction, enlargement, improvement, or modification of federal or non-federal hurricane protection projects, including mitigation related thereto*, shall not exceed the

*compensation required by the Fifth Amendment of the Constitution of the United States of America.* However, this Paragraph shall not apply to compensation paid for a building or structure that was destroyed or damaged by an event for which a presidential declaration of major disaster or emergency was issued, if the taking occurs within three years of such event. *The legislature by law may provide procedures and definitions for the provisions of this Paragraph.* (Emphasis added.)

The addition of § 4(G) to Article I restricts compensation for the taking of, or loss or damage to, property rights necessary for hurricane protection projects to that required by the Fifth Amendment. Thus, an owner of private property taken for use in hurricane protection projects is no longer entitled to just compensation to the full extent of his loss.

Act 853 also amended La. Const. art. VI, § 42(A), governing the rights and obligations of levee districts, to impose the same restriction:

(A) Compensation. Notwithstanding any contrary provision of this constitution, lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law. *With respect to lands and improvements actually used or destroyed in the construction, enlargement, improvement, or modification of federal or non-federal hurricane protection projects, including mitigation related thereto, such payment shall not exceed the amount of compensation authorized under Article I, Section 4(G) of this constitution.* However, nothing contained in this Paragraph with respect to compensation for lands and improvements shall apply to batture or to property the control of which is vested in the state or any political subdivision for the purpose of commerce. If the district has no other funds or resources from which the payment can be made, it shall levy on all taxable property within the district a tax sufficient to pay for property used or destroyed to be used solely in the district where collected. (Emphasis added.)

Louisiana R.S. 38:301, governing compensation for levee district appropriations, contains the following provision applicable when property is taken by way of a permanent levee servitude:

C. (1)(h) The measure of compensation for lands and improvements taken or destroyed for levee or levee drainage purposes by way of a

permanent levee servitude shall be the fair market value of the property taken or destroyed before the proposed use of the property or construction of the levee facilities, without allowing any change in value caused by the construction of the levee facilities.

Therefore, for land taken by way of a permanent levee servitude, as in Jarreau's case, compensation is fair market value of the property taken or destroyed before the proposed use.[9] See La. R.S. 38:301(C)(1)(h). The compensation for a permanent levee servitude applies to all lands, exclusive of batture, and improvements appropriated, taken, used, damaged, or destroyed for levee purposes. See La. R.S. 38:301(C)(1)(i).

The terms "fair market value" and "full extent of the loss," as they pertain to levee districts, are defined in La. R.S. 38:281. Act 567 of 2006 amended and reenacted La. R.S. 38:281(3) and (4), to provide the following:

(3) "Fair market value" means the value of the lands or improvements actually taken, used, damaged, or destroyed for levees or levee drainage purposes as determined in accordance with the uniform criteria for determining fair market value as defined in R.S. 47:2321 et seq. *Pursuant to Article 1, Section 4(G) and Article VI, Section 42(A) of the Constitution of Louisiana, such determination of fair market value shall not exceed the compensation required by the Fifth Amendment of the Constitution of the United States of America unless an exception as provided in Article I, Section 4(G) of the Constitution of Louisiana is applicable.* (Emphasis added.)

(4) "Full extent of the loss" shall not be construed to include payment for uses which are remote, speculative, or contrary to law; uses for which the property is still suitable; or elements of property ownership which are not actually taken, used, damaged, or destroyed for levees or drainage purposes. *Further, pursuant to Article 1, Section 4(G) and Article VI, Section 42(A) of the Constitution of Louisiana, payment for the full extent of the loss shall not exceed fair market value and shall not exceed the compensation required by the Fifth Amendment of the*

---

[9] In his opposition to the Levee District's writ application, Jarreau claims the Levee District did not prove the riparian nature of the appropriated property. However, Jarreau failed to contest the validity of the appropriation by filing a verified petition in the Seventeenth Judicial District Court of Lafourche Parish within sixty (60) days after the adoption of the appropriating resolution as required; thus, he is barred from asserting any right or claim contesting the appropriation, except for a claim for compensation in accord with La. R.S. 38:301(C)(2)(h)(ii). See La. R.S. 38:301(C)(4)(a).

*Constitution of the United States of America unless an exception as provided in Article I, Section 4(G) of the Constitution of Louisiana is applicable.* (Emphasis added.)

The second sentence in each of the above definitions was added by Act 567 and directs the court to look to La. Const. art. I, § 4(G) and La. Const. art. VI, § 42. Those two constitutional provisions now limit compensation to property owners whose land is taken, damaged, or destroyed for construction, enlargement, improvement, or modification of hurricane protection projects, to what is required by the Fifth Amendment.

The Levee District maintains that Jarreau is not entitled to any compensation because the Fifth Amendment does not require compensation for an appropriation of a permanent levee servitude.[10] Jarreau, on the other hand, contends that the 2006 amendments require the Levee District to compensate him, at the very least, the amount required by the Fifth Amendment or the fair market value of the property at the time of the taking for public use, *i.e.* the date of the appropriating resolution. See La. R.S. 38:301(C)(1)(g).

After examining the 2006 amendments to La. Const. art. I, § 4, La. Const. art. VI, § 42, and La. R.S. 38:281(3) and (4), we find the terms "fair market value" and "full extent of the loss" in reference to "the compensation required by the Fifth Amendment" must be reconciled. Therefore, we will look to the legislative history of the laws governing levee servitudes to ascertain which of the following arguments is correct: the legislature intended to limit the compensation due a property owner whose property is appropriated by way of a permanent levee servitude for use in a hurricane protection project to the amount allowed by the Fifth Amendment, *i.e.* the fair market value of the property at the time of the

---

[10] The Levee District neither raised this issue nor challenged the constitutionality of the 2006 amendments in the district court.

13

taking; or instead, the legislature intended to limit compensation to the amount allowed by the Fifth Amendment for an appropriation, *i.e.* nothing.

### *History of the Louisiana Levee Servitude*

Prior to the Louisiana Purchase, the sovereign governments of France and Spain included in their land grants both reservations of public servitudes over riparian land and onerous levee obligations requiring such owners to build levees and keep them in repair at their own expense under penalty of forfeiture. *Dickson v. Board of Com'rs*, 210 La. 121, 131-35, 26 So. 2d 474, 477-80 (1946) (citing *Eldridge v. Trezevant*, 160 U.S. 452, 16 S. Ct. 345, 347, 40 L.Ed. 490 (1896)). Under this regime, the riparian landowner bore the burden and expense of protecting all people and property from flooding. *Dickson*, 210 La. at 133, 26 So. 2d at 478. The imposition of this obligation on private parties persisted even after the Louisiana Purchase. *DeSambourg v. Board of Commissioners*, 621 So. 2d 602, 607 (La. 1993), *cert. denied*, 114 S. Ct. 925 (1994). It was not until the mid-19[th] century that the practice changed due to the need for an efficient and cohesive state-wide plan for flood protection. *Id.*; John W. Jewell, *Civil Law Property-Levee Servitude-Civil Code Article 665*, 27 La. L. Rev. 321, 328 (1967). The obligation to build and maintain levees was then shifted from the private landowner to the state government. The first levee district was formed in 1852, and since 1878, the construction, maintenance and supervision of the levee system has been a function of the government. *Id.*; 27 La. L. Rev. at 327.

Despite the shift in responsibility, riparian land remained burdened by a levee servitude. *DeSambourg*, 621 So. 2d at 607. When the state assumed responsibility for levees, no right of action for compensation existed for lands appropriated pursuant to the levee servitude. *Id.* Recognizing the state's existing

14

right, the United States Supreme Court in *Eldridge* noted "the riparian owner enjoys his property *sub modo*, i.e., subject to the right of the public to reserve space enough for levees, public roads and the like" and "never acquires complete dominion." *Eldridge*, 16 S. Ct. at 347.

In 1898, the Louisiana legislature, for the first time, provided compensation to riparian landowners whose property was appropriated under the levee servitude. *Id*.; see also La. Const. of 1898, art. 312. However, the effect of this constitutional provision was limited to the jurisdiction of the Orleans Levee District and specifically exempted batture. See La. Const. of 1898, art. 312; *Dickson*, 210 La. at 135, 26 So. 2d at 479. The Louisiana Constitution of 1921 provided compensation for the first time on a statewide basis to property owners whose lands, excluding batture, and improvements were used or destroyed for levee or levee drainage purposes. See La. Const. of 1921 art. XVI, § 6; see also John A. Lovett*, Batture, Ordinary High Water, and the Louisiana Levee Servitude*, 69 Tul. L. Rev. 561, 562 n.2 (1994). This provision entitled riparian landowners to receive up to "the assessed value of the preceding year" of the land taken and, for many years, was considered a "mere gratuity." *DeSambourg*, 621 So. 2d at 608 (citing *Delaune v. Board of Comm'rs*, 230 La. 117, 124, 87 So. 2d 749, 753 (1956); see also 69 Tul. L. Rev. 561, 562 n.2.

The Louisiana Constitution of 1974 reaffirmed the levee servitude as a constitutional, legal servitude. See La. Const. art. VI, §§ 38-42. The new Constitution altered the measure of the riparian landowner's compensation from the property's "assessed value of the preceding year" to providing that for "lands and improvements … actually used or destroyed for levees or levee drainage purposes [compensation] shall be paid as provided by law." La. Const. art. VI, §

15

42(A). Implementing the 1974 constitutional provision, the legislature increased compensation from "assessed value" to "fair market value to the full extent of the loss" for the actual taking of improvements and all lands, excluding batture. See La. R.S. 38:301, as amended by Acts 1985, No. 785; see also Acts 1978, No. 314 and Acts 1979, No. 676.

Although the Louisiana Constitution and state statutes require gratuitous compensation for levee servitude appropriations, courts have maintained that the Fifth Amendment does not mandate compensation. See, e.g., *General Box Co. v. United States*, 351 U.S. 159, 166-67, 76 S. Ct. 728, 100 L.Ed. 1055 1055 (1956) (appropriation of levee servitude did not constitute a taking within the meaning of the Fifth Amendment); *DeSambourg*, 621 So. 2d at 606-08 (compensation is not constitutionally mandated in appropriation cases); *Dickson*, 26 So. 2d at 477, 479 (constitutional due process requirements apply to expropriations but not to appropriations for levee purposes); *Peart v. Meeker*, 12 So. 490, 490 (La. 1893) (no compensation is owed for appropriations for levee purposes); *Vela v. Plaquemines Parish Government*, 97-2608 – 97-2611, p. 3 (La. App. 4 Cir. 3/10/99), 729 So. 2d 178, 181 ("there is no historical Fifth Amendment imperative to provide compensation in appropriation situations as opposed to expropriations").

In 2006, Act 853 originated in the Senate as S.B. 27. The author of S.B. 27 testified before the Senate Judiciary Committee, Section A, that the substance and purpose of the bill was to propose constitutional amendments to limit compensation for the taking of property for use in hurricane protection and flood control projects and for levees and levee drainage purposes to that required by the Fifth Amendment to the U.S. Constitution. See *Minutes of Meeting*, pp. 5-7, Senate Committee on Judiciary, Section A, 2006 Regular Session, April 11, 2006,

S.B. 27 (statement by Sen. R. Dupre). Also, the proposed legislation was in response to the recent decisions in *Kelo v. City of New London, Connecticut*[11] and *State, Pontchartrain Levee District v. St. Charles Airline Lands, Inc.*[12] *Id*. The proposed amendments were necessary to allow the state and local levee districts to obtain property for hurricane protection and flood control projects at reasonable costs in order to qualify for federal funding on those projects. *Id*. The proposed constitutional amendments were similar to those passed in 2003 in response to the exorbitant awards to oyster farmers and lessees for damages sustained as a result of coastal restoration projects.[13] *Id*.

House Bill 450, the duplicate bill to S.B. 27, was presented to the House Committee on Transportation, Highways, and Public Works as a measure to provide for compensation for property taken for levee projects to conform to that allowed for then existing coastal restoration projects. The committee was informed that landowners were not in favor of the measure. One committee member asked whether treating property owners differently would be a deprivation

---

[11] See *Kelo v. City of New London, Conn.*, 545 U.S. 469, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005) (Supreme Court held that the city of New London's proposed development plan to revitalize an economically distressed city, including its downtown and waterfront areas, qualified as a "public use" within the meaning of the Takings Clause of the Fifth Amendment to the Constitution.).

[12] See *State, Pontchartrain Levee District v. St. Charles Airline Lands, Inc.*, 03-1292, 03-1293,04-20 (La. App. 5 Cir. 4/27/04), 871 So. 2d 674, writ denied 2004-1552 (La. 10/1/04), 883 So. 2d 992 (landowner was awarded a total of $3,068,420.50 in compensation for wetlands property expropriated for use in a hurricane protection project despite the property having a total fair market value of only $66,830.00 when expropriated).

[13] See Acts 2003, No. 652 (amended and reenacted R.S. 49:214.5, requiring the State to be held harmless for coastal restoration projects); see also Acts 2003, No.1295 (Joint resolution submitting an amendment to La. Const. article I, §4 for popular vote; the amendment allowed the legislature to limit the extent of recovery for "takings" or damages due to coastal restoration projects.); see also Acts 2003, No. 583 (enacting La. R.S. 49:213.9 to limit the recovery for property taken or affected by coastal restoration activities).

of due process. The committee was assured landowners were not being treated differently.[14]

On May 1, 2006, H.B. 450 was presented to the House Civil and Procedure Committee for review of the proposed ballot language. The committee chairman emphasized the substance of the proposed constitutional amendments was to provide some relief to governmental entities that have to acquire levee right-of-ways to get them at more reasonable costs.[15]

Act 567 of 2006 originated as S.B. 64. Its duplicate, H.B. 451, was presented to the House Committee on Transportation, Highways, and Public Works as a measure related to compensation for property taken for levees. An amendment was offered to add the language "hurricane protection and flood control projects, including" to the bill; the amendment passed. After the vote, a committee member commented that the legislation would reduce property owners' then existing rights under the state constitution.[16]

When viewed from the historical perspective of the law and jurisprudence pertaining to levee servitudes, we conclude the 2006 amendments to La. Const. art. I, § 4, La. Const. art. VI, § 42, and La. R.S. 38:281(3) and (4) reduced, rather than eliminated, the measure of damages to be paid to the owner of property for the taking of, or loss or damage to, property rights for the construction, enlargement, improvement, or modification of hurricane protection projects from "full extent of the loss" to the more restrictive "just compensation" measure required by the Fifth

---

[14] See Minutes of Meeting, pp. 3-4, House Committee on Transportation, Highways, and Public Works, 2006 Regular Session, April 25, 2006, H.B. 450.

[15] See House Civil Law and Procedure Committee, May 1, 2006, 2006 Regular Session (La. 2006); http://house.louisiana.gov/Hse Video Requested.aspx.

[16] See Minutes of Meeting, p. 5, House Committee on Transportation, Highways, and Public Works, 2006 Regular Session, April 25, 2006, H.B. 451.

Amendment, which is the fair market value of the property at the time of the appropriation, based on the current use of the property, before the proposed appropriated use, and without allowing for any change in value caused by levee construction.

Following the devastation caused by Hurricanes Katrina and Rita to Louisiana citizens and property, the legislature wanted to take all measures necessary to repair and restore the Louisiana coast, and to protect the State and its citizens from future hurricane and flood events. The ability of the state and local levee districts to protect life and property is directly impacted by its right-of -way acquisition costs, a major component of a hurricane and flood protection project's overall cost. Given the "full extent of loss" provisions of the 1974 Constitution, the state and levee districts were faced with daunting expropriation or appropriation costs. The legislature had to take steps to contain those costs for Louisiana to qualify for federal funds for hurricane protection and flood control projects. While the legislature wanted to significantly reduce acquisition costs, it also sought to protect an owner's right to compensation for the taking, loss or damage to, his property for use in hurricane protection projects. We find by amending La. Const. art. VI, §42 to limit compensation for the appropriation of property for levee purposes to the amount required by the Fifth Amendment, and amending La. R.S. 38:281(3) and (4) to tie to the definitions of "fair market value" and "full extent of the loss" to La. Const. art. I, § 4(G), the legislature intended to preserve, yet restrict, the "gratuitous compensation" allowed for the appropriation of a levee servitude. If the legislature had intended to eliminate all compensation for an appropriation of a permanent levee servitude for a hurricane protection project, then it would have amended La. Const. art. VI, § 42 and La. R.S. 38:301 to

19

do so. The fact that it did not suggests the legislature intended to treat property owners the same, allowing them compensation for the fair market value of their property whether it was expropriated or appropriated for a hurricane protection project.

*Compensation*

Based on our conclusion that the 2006 amendments entitle Jarreau to compensation for the taking of, loss or damage to, his property by way of a permanent levee servitude for a hurricane protection project, his compensation is limited to that required by the Fifth Amendment, which is the fair market value of the property at the time of the appropriation, which does not include loss profits and other severance damages.

The fair market value of property taken for public purposes is the price a buyer is willing to pay after he has considered all of the uses to which the property may be put, where such uses are not speculative, remote, or contrary to law. See *West Jefferson Levee District,* 93-1718 at 17, 640 So.2d at 1273. The current use of the property is presumed to be the highest and best use. *Id*. at 20, 640 So. 2d at 1275.

The record indicates that at the time of the appropriation in January 2011, Jarreau was using the Jarreau tract for excavating dirt for Bayou Construction's contracts. Bennet Oubre, Jarreau's expert real estate appraiser, determined the fair market value of the appropriated portion of the Jarreau tract on the January 10, 2011, was $11,869.00, without any consideration for loss profits related to the value of the dirt. Oubre concluded that the highest and best use of the appropriated portion, as well as the entire 17.1 acres, was the current use as a "dirt pit" operation. He classified the property as a mixed-use tract on the date of

20

appropriation, for both commercial/industrial and residential purposes. Oubre also determined that the Levee District's appropriation of the permanent levee servitude was paramount to a complete deprivation of any use of the remaining Jarreau tract, concluding that there was no reasonable use left for the tract after the appropriation.

Martin Glynn, the Levee District's expert real estate appraiser, testified the Jarreau tract had a fair market value of $1,820.00. Glynn used a standard mathematical approach to get the contributory value of the Jarreau tract, concluding that the rear part of Jarreau's property was not as valuable as the front portion along the highway. He stated that there was no sales data on which to base a valuation for the rear acre of property, and the appropriated portion of the Jarreau tract had no real value as a stand-alone tract since it was cut off from highway access. Glynn also found that the highest and best use of the property was multi-use, combining residential, pastureland, and commercial. He determined that the front two acres of the Jarreau tract were the most marketable and the overall value of the entire tract was $11,500.00 per acre.

William J. Pousson, the Levee District's other expert real estate appraiser, appraised the appropriated part of the Jarreau tract at $1,301.00 to $1,425.00, based on comparable properties. Pousson estimated the entire Jarreau tract to be worth $13,000.00 per acre, but he testified that the appropriated rear portion was not as valuable as the remaining tract due to the lack of highway and utility access. Pousson determined the appropriated portion had a different highest and best use (dirt pit) than the remainder of the Jarreau tract (residential/commercial).

When further questioned, Oubre explained the difference in his valuation analysis and why he did not separate the rear portion of the Jarreau tract when he

valued the property. He looked at the property as a whole, and disagreed with the approach taken by the other appraisers, because the Jarreau tract was not cut off from highway and utility access until after the appropriation and there were no comparable sales where the rear portion of the tract had been cut off. Oubre maintained that his valuation of the entire property at $13,000.00 per acre was very similar to the other appraisals, and opined the amount was correct based on comparable data for sales of the whole property.

After reviewing the record, we find the value of Jarreau's property to be $13,000.00 per acre. We also find that Oubre's method of valuing the entire property without allowing for any change in value caused by the appropriation was correct in light of the statutory measure of compensation for land taken by way of a permanent levee servitude. See La. R.S. 38:301(C)(1)(h). Since the appropriated portion was less than an acre, we accept Oubre's valuation of $11,869.00, as of the date of the appropriation. We will affirm the court of appeal judgment insofar as it awarded Jarreau $11,869.00, less the amount previously tendered by the Levee District, plus interest from the date of the appropriation.

Jarreau relies on the cases of *Kimball Laundry Co. v. United States*, 338 U.S. 1, 69 S. Ct. 1434, 93 L. Ed. 1765 (1949) and *National Food & Beverage Co., Inc. v. United States*, 105 Fed. Cl. 679 (Fed. Cl. 2012) to argue that the Levee District owes him compensation for the value of his excavating business.[17] We find no merit to this argument.

In *Kimball Laundry*, the federal government took temporary possession of the Kimball laundry facility to clean military uniforms during World War II, and, as a result, the laundry could not service its customers for the duration of the

---

[17] The Pacific Legal Foundation and the National Federation of Independent Business Small Business Legal Center filed an amici curiae brief in support of Jarreau on this issue.

taking, three and one-half years. 338 U.S. at 3. The Supreme Court found the taking of the laundry facility "completely …appropriated the laundry's opportunity to profit" from its established customer base for the duration of the occupation, leaving the laundry with far fewer customers when the property was eventually returned. *Id* at. 14. Because the goal of the Takings Clause is to make the dispossessed property owner whole, the Court held the government had to compensate Kimball Laundry for damage to its earning power, customer base and goodwill. *Id*. at 16.

In *National Food*, the issue was whether the plaintiff had a compensable property interest in the borrow material (clay) located on its Louisiana property taken for levee purposes by the U.S. Army Corps of Engineers. 105 Fed. Cl. at 700. The court determined that where the highest and best use of the property is as a borrow pit, the fair market value for that property may include the price per cubic yard of the clay removed from the landowner's property for hurricane levee repair. *Id*. (citing *United States v. 22.80 Acres of Land, More or Less*, 839 F. 2d 1362, 1364 n.2 (9th Cir. 1988) (approving a cubic-yard basis of compensation where "the government is taken the [material] itself, [and] not the overlying parcel of land")).

Jarreau's case is distinguishable from *Kimball Laundry* and *National Food*. Here, unlike in *Kimball Laundry*, the Levee District did not take Jarreau's business. The dirt's value in this case is subsumed in the value of the surface, and it is only after extraction and delivery to another location that the dirt has additional value. Moreover, no evidence in the record indicates that the dirt from Jarreau's property is of such high quality or has remarkable attributes that once he is compensated for surface, he cannot find another site to extract dirt and undertake his dirt hauling operations. *National Food* did not involve a levee servitude

23

appropriation where the government had a pre-existing right to the landowner's property.  Rather the property was taken via a commandeering order issued by the Plaquemines Parish president under the authority of the Louisiana Homeland Security and Emergency Assistance and Disaster Act, and the "taking" occurred in 2006 before the effective date of the amendments.  Thus, we agree with the First Circuit's reversal of the damages award to Jarreau and Bayou Construction for economic and business losses, and will affirm its judgment in that regard.

***Attorneys' Fees***

We now consider whether the court of appealed erred in reversing the trial court and awarding Jarreau attorneys' fees pursuant to La. R.S. 13:5111. Both the trial court and court of appeal acknowledged two statutes address attorneys' fees in appropriation cases.  La. R.S. 13:5111, provides:

> A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking.

Additionally, La. R.S. 38:301(C)(2)(f) provides:

> Reasonable attorneys' fees may be awarded by the court if the amount of the compensation found to be due by the state, the levee board, or the federal government is less than the amount of compensation awarded in any judgment seeking additional compensation. The attorneys' fees shall not exceed twenty-five percent of the difference

24

between the award and the amount found to be due by the state, the levee board, or the federal government.

Although La. R.S. 13:5111 applies generally to all cases where property is "taken" for any purpose by any method other than expropriation, La. R.S. 38:301(C)(2)(f) is tailored specifically to matters involving the taking, use, damage, or destruction of property *for levee purposes* pursuant to La. R.S. 38:301, as in this case. The rules of statutory construction dictate that La. R.S. 38:301(C)(2)(f) should prevail as the exception to the general rule provided by La. R.S. 13:5111.

Finally, we find no merit to Jarreau's argument that if a conflict does exist, the statutes can be read *in pari materia* to mean that La. R.S. 13:5111 merely adds to the amount of attorneys' fees recoverable. Such an interpretation would render the explicit legislative cap found in La. R.S. 38:301(C)(2)(f) meaningless. We find the court of appeal erred in awarding attorneys' fees based on La. R.S. 13:5111 and, thus, reverse that part of the judgment. Applying La. R.S. 38:301(C)(2)(f), we find Jarreau is entitled to attorneys' fees in the amount of $2,635.57.[18]

## DECREE

Accordingly, for the above reasons, the judgment of the court of appeal is reversed, in part, insofar as it awarded Jarreau and Bayou Construction attorneys' fees of $142,551.50. All other portions of the court of appeal judgment are affirmed. We hereby render judgment in favor of Jarreau and Bayou Construction and against the Levee District for attorneys' fees in the amount of $2,635.57.

**AFFIRMED IN PART; REVERSED IN PART AND RENDERED.**

---

[18] ($11,869.00 - $1,326.69) x .25 = $2,635.57.

25

03/31/17

# SUPREME COURT OF LOUISIANA

## NO. 2016-C-0788

## CONSOLIDATED WITH

## No. 2016-C-0904

## SOUTH LAFOURCHE LEVEE DISTRICT

## VERSUS

## CHAD M. JARREAU

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT,
PARISH OF LAFOURCHE*

**WEIMER, J.**, additionally concurring.

I write to emphasize that this case illustrates the infinitely delicate and difficult balance that the citizens and legislature have confected between providing levee protection and recognizing private landowner rights.

The levee system in the southern portion of Lafourche Parish exists for storm protection and to limit salt water intrusion from the Gulf of Mexico.[1] South Lafourche and the surrounding areas are at the epicenter of some of the most significant losses of land in the world. As the people of South Lafourche long ago recognized, much of their land was disappearing at an alarming rate and waters from the gulf were increasingly intruding on the land that remained. Where crops were grown, cattle grazed, and loved ones were buried only a generation or so ago, the

---

[1] According to the levee district's website: "Our Goal is...to provide, within our district, the highest possible level of protection from flooding due to high tides, heavy rain falls, tropical storms and hurricanes for the safety and well[-]being of the community of South Lafourche." http://www.slld.org/ (last visited 3/23/17).

land is now covered by water. If nothing was done, their homesteads, businesses, and the incredibly unique culture and way of life in South Lafourche would all be lost. The resilient citizens of South Lafourche boldly took steps to tax themselves and construct a levee system to preserve what was precious to them from being lost to the encroaching waters.

The rights of landowners in the southern portion of Lafourche Parish, as in the entire state, are afforded legal protections. The 2006 constitutional and statutory amendments described in the majority opinion are designed to allow the construction and maintenance of levee systems in a way that provides the protection levees afford, while limiting intrusion on landowners' rights. As the situation here demonstrates, a portion of the landowner's property is being used for levee maintenance, and although historically it could be argued no compensation was owed for such a project even dating back to the time before Louisiana became a state, under the 2006 statutes, the levee district must now compensate the landowner in the amount of fair market value.

Without such levee projects in the southern part of Lafourche Parish, if the trend of coastal land loss continues, there would eventually be little or no private land to protect.[2] While the public policy of this state is ultimately established by its citizens and legislature, the manner in which the 2006 constitutional and statutory amendments have operated in this case suggests that a balance now exists between the public's need for levee protection and the protection of landowners' rights.

---

[2] See USGS map: 100+ Years of Land Change for Coastal Louisiana (Sept. 28, 2015) at https://lacoast.gov/new/Pubs/Map_data/2003landloss11X17.pdf.

SUPREME COURT OF LOUISIANA

No. 2016-C-0788

CONSOLIDATED WITH

No. 2016-C-0904

SOUTH LAFOURCHE LEVEE DISTRICT

VERSUS

CHAD M. JARREAU

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF LAFOURCHE

**Hughes, J., dissents and assigns reasons.**

Defendant is in the dirt business and owns land from which he digs and sells dirt. The government is entitled to "appropriate" defendant's land, but must pay him fair compensation mandated by the Constitution. This court affirms an award of $11,869 despite evidence in the record that the dirt taken from the land has a value in excess of $100,000. Even if the most restrictive measure of compensation is applied, this value should be considered in determining the award to defendant. When the government can take private property without paying the landowner, something is wrong.

1