STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

\* \* \* \* \* \* \*

2018 CA 1722

WEST BATON ROUGE PARISH COUNCIL

VERSUS

JOSEPH GORDON TULLIER, SR., RAE Q. TULLIER,
BARTON JAMES TULLIER, AND PHILLIP JOHN DEBENEDETTO

JUDGMENT RENDERED: ⌐JAN 1 1 2021

\* \* \* \* \* \* \*

Appealed from the
Eighteenth Judicial District Court
In and for the Parish of West Baton Rouge • State of Louisiana
Docket Number 43,976 • Division C

The Honorable Alvin Batiste, Jr., Judge Presiding

\* \* \* \* \* \* \*

John F. Crawford, II
Baton Rouge, Louisiana

COUNSEL FOR APPELLANTS
DEFENDANTS—Joseph Gordon
Tullier, Sr.; Rae Q. Tullier;
Barton James Tullier; and Phillip
John Debenedetto

Richard J. Ward, Jr.
*District Attorney*
Louis W. Delahaye
*Assistant District Attorney*
Plaquemine, Louisiana

COUNSEL FOR APPELLEE
PLAINTIFF—West Baton Rouge
Parish Council

and

A.M. "Tony" Clayton
Port Allen, Louisiana

Jeff Landry
*Attorney General*
Richard L. Traina
Ryan M. Seidemann
*Assistant Attorneys General*
Baton Rouge, Louisiana

COUNSEL FOR APPELLEE
State of Louisiana

\* \* \* \* \* \*

**BEFORE: WHIPPLE, C.J., GUIDRY, AND WELCH, JJ.**

Guidry, J. dissents in part and assigns reasons

**WELCH, J.**

Defendants—Joseph Gordon Tullier, Sr., Rae Q. Tullier, Barton James Tullier, and Phillip John Debenedetto—appeal from the trial court's denial of their peremptory exception raising the objection of no right of action and from the granting of a permanent injunction in favor of the plaintiff, West Baton Rouge Parish Council ("Council"). For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The defendants are riparian landowners (collectively "landowners") along the Mississippi River in West Baton Rouge Parish. The landowners' property is burdened with a permanent levee servitude in favor of the Atchafalaya Basin Levee District ("District"). On September 2, 1931, the District appropriated the landowners' property for levee purposes.

In August 2012, the District entered into a Cooperative Endeavor Agreement with the Council to construct bicycle paths and walkways atop the levees in West Baton Rouge Parish.[1] After securing funding for the project, the Council entered into a public works construction contract in April 2017 with R.J. Daigle & Sons Contractors, Inc. for construction of the bicycle paths and walkways atop the levees.

On October 5, 2017, the Council filed a petition for permanent injunction, preliminary injunction, temporary restraining order, and damages against the landowners, asserting that: La. R.S. 38:301 authorized the District to construct bicycle paths and walkways atop the levees and that the permanent levee servitude granted to the District pursuant to law included the construction of bicycle paths

---

[1] A levee board, or levee district, is a state agency. See **Bd. of Comm'rs of Orleans Levee Dist. v. Dep't of Nat. Res.**, 496 So. 2d 281, 289 (La. 1986). For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual. 1974 La. Const. art. 7, §14(C). The board of commissioners of a levee district has authority to buy and sell property, to make and execute all contracts, and to do and perform all things necessary to carry out the objects, powers, and duties of the board. See La. R.S. 38:306(A) and La. R.S. 38:309(C).

2

and walkways atop the levees; the landowners obstructed or attempted to obstruct the construction of the bicycle paths and walkways; and that such actions by the landowners would cause the Council immediate and irreparable injury, loss, and damages if the landowners were allowed to continue to interrupt or were allowed to attempt to continue to interrupt the construction of the bicycle paths and walkways. The Council sought issuance of a temporary restraining order, preliminary injunction, and permanent injunction prohibiting the landowners or persons acting on their behalf from interrupting or attempting to interrupt construction of the bicycle paths and walkways atop the levees. The Council also sought damages for construction delays and/or breach of contract, demobilization and remobilization costs, and security costs. The trial court issued a temporary restraining order that date, restraining and enjoining the landowners from obstructing or interfering with the construction of the levee top bicycle paths and walkways.

On November 13, 2017, the landowners filed a peremptory exception raising the objections of no right of action and nonjoinder of a party. They asserted that the Council had no right of action because it was not the owner of the permanent levee servitude and because the Council failed to comply with the stipulations in the Cooperative Endeavor Agreement. The landowners further asserted that the Council failed to join the District as a party, since the District is the owner of the permanent levee servitude. The landowners also filed a motion to dissolve the temporary restraining order in favor of the Council due to the Council's alleged failure to prove irreparable injury. Following a hearing, the trial court sustained the landowners' exception raising the objections of no right of action and nonjoinder of a party and granted the landowners' motion to dissolve the temporary restraining order.

3

Thereafter, the Council amended its petition, asserting that the Council and the District had entered into an Assignment of the Bike Trail Servitude, granting to the Council a servitude for the design, construction, maintenance, management, repair, and anything related to or incidental to the levee top bicycle paths and walkways.

In response, the landowners re-urged a peremptory exception raising the objection of no right of action, asserting that the Council had no right of action because La. R.S. 38:301(A)(3)-(4): (1) does not retroactively apply to the levee or the landowners' property pursuant to La. R.S. 1:2 and La. C.C. art. 6; (2) does not apply to the levee on the landowners' property because the provisions of La. R.S. 38:301(A)(3)-(4) unconstitutionally expand the permanent levee servitude granted to the District pursuant to La. C.C. art. 665; and (3) is unconstitutional by (a) increasing the burden of the permanent levee servitude granted by the landowners to the District and divesting the landowners' of the right to use their private land in violation of impairment of obligation of contracts and divestiture of vested rights pursuant to La. Const. art. 4, §15 and U.S. Const. Art. I, §10l; (b) depriving the landowners' of their property without due process of law in violation of La. Const. art. 1, §2 and the Fourteenth Amendment to the U.S. Constitution; and (c) violating the Fifth Amendment to the U.S. Constitution. The trial court held a hearing on the landowners' peremptory exception raising the objection of no right of action on June 18, 2018, and subsequently signed a judgment on June 20, 2018, denying the exception.

On August 17, 2018, the matter proceeded to trial on the Council's request for a permanent injunction, following which, the trial court signed a judgment on August 29, 2018, granting the Council's request for a permanent injunction against the landowners. The judgment permanently enjoined and prohibited the landowners or anyone acting on their behalf from interrupting, interfering, or

4

attempting to interrupt or interfere with the construction of the levee top bicycle and walking paths; from taking any actions that interrupt or may interrupt, delay, or impede construction, repair, or maintenance by the Council, the Council's agent, or contractor; or interfere, obstruct, or attempt to interfere or obstruct the use of the levee top bicycle and walking paths by the general public.

The landowners now appeal the trial court's August 29, 2018 judgment contending that the trial court erred in denying their peremptory exception raising the objection of no right of action and erred in issuing a permanent injunction in favor of the Council and against the landowners.[2]

## JURISDICTION

A threshold inquiry in any case is whether there is a basis for jurisdiction. Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties and to grant the relief to which they are entitled. La. C.C.P. art. 1. Appellate courts have a duty to examine subject matter jurisdiction *sua sponte*, even when the litigants do not raise the issue. **Advanced Leveling & Concrete Solutions v. Lathan Company, Inc.,** 2017-1250 (La. App. 1st Cir. 12/20/18), 268 So. 3d 1044, 1046 (*en banc*).

The Louisiana Code of Civil Procedure defines three types of judgments: (1) an interlocutory judgment, which determines preliminary matters in the course of an action, but does not determine the merits (La. C.C.P. art. 1841); (2) a final judgment, which determines the merits of the case in whole or in part (La. C.C.P. art. 1841); and (3) a partial final judgment, which disposes of some, but not all, of the issues on the merits, and in some instances requires a designation of finality by

---

[2] The denial of a peremptory exception raising the objection of no right of action is an interlocutory judgment, and therefore, is generally not appealable. However, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to review of the final judgment. See **Bourg v. Safeway Ins. Co. of Louisiana,** 2019-0270 (La. App. 1st Cir. 3/5/20), 300 So. 3d 881, 887. See also **Judson v. Davis,** 2004-1699 (La. App. 1st Cir. 6/29/05), 916 So. 2d 1106, 1112-13, writ denied, 2005-1998 (La. 2/10/06), 924 So. 2d 167. Thus, an interlocutory denial of a peremptory exception is subject to review on appeal in connection with the review of an appealable judgment in the same case. **Bourg,** 300 So. 3d at 887.

the trial court for the purpose of an immediate appeal (La. C.C.P. art. 1915). Different rules govern the appealability of these three types of judgments.[3] This court's appellate jurisdiction extends to final judgments, which determine the merits of an action, in whole or in part.[4] See La. C.C.P. arts. 1841, 2081, and 2083(A). See also **Quality Envtl. Processes, Inc. v. Energy Dev. Corp.**, 2016-0171, 2016-0172 (La. App. 1st Cir. 4/12/17), 218 So. 3d 1045, 1053.

A valid judgment must be "precise, definite, and certain." **Advanced Leveling**, 268 So. 3d at 1046. The specific nature and amount of damages must be determinable from a judgment so that a third person is able to determine from a judgment the amount owed without reference to other documents. **Vanderbrook v. Coachmen Indus., Inc.**, 2001-0809 (La. App. 1st Cir. 5/10/02), 818 So. 2d 906, 913, overruled on other grounds, **Advanced Leveling**, 268 So. 3d at 1046.[5] Moreover, a final appealable judgment must contain decretal language, and the judgment must name the party in favor of whom the ruling is ordered, the party against whom the judgment is ordered, and the relief that is granted or denied. **Advanced Leveling**, 268 So. 3d at 1046. These determinations must be evident from the language of the judgment without reference to other documents in the record. **Laird v. St. Tammany Par. Safe Harbor**, 2002-0045 (La. App. 1st Cir. 12/20/02), 836 So. 2d 364, 366.

In the instant case, the trial court signed the August 29, 2018 judgment after a full trial on the merits on the Council's request for a permanent injunction. In

---

[3] See La. C.C.P. arts. 2083(A), 2083(C), and 1915(B) ("A final judgment is appealable in all causes in which appeals are given by law, whether rendered after hearing, by default, or by reformation under Article 1814," whereas "[a]n interlocutory judgment is appealable only when expressly provided by law.").

[4] Meanwhile, this court's supervisory jurisdiction extends to interlocutory judgments and non-certified partial final judgments and may be invoked via a timely-filed writ application. See La. Const. Art. 5, § 10 and La. C.C.P. arts. 1841, 1915(B), 2201, and 2083(C).

[5] Under the former rule set forth in **Vanderbrook**, the appellate court could elect to vacate any portion of a judgment found to be uncertain and indefinite, and review the remaining portions of the judgment.

addition to granting a permanent injunction in favor of the Council and against the landowners, the August 29, 2018 judgment decreed, in pertinent part:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREEED, that the Defendants', JOSEPH GORDON TULLIER, SR., RAE Q. TULLIER, BARTON JAMES TULLIER AND PHILLIP JOHN DEBENEDETTO, right to seek compensation under La. R.S. 38:301C (1)(i) is reserved.

A plain reading of this language evidences that the judgment simply reserves the right of the landowners to assert a future claim for compensation under La. R.S. 38:301, rather than maintaining a claim that was then pending before the court.[6] It is akin to a reservation of rights found in a compromise, which reserves a plaintiff's right to pursue a subsequent action and serves as an exception to the law of *res judicata*. See **Jones ex rel. Jones v. GEO Group, Inc.**, 2008-1276 (La. App. 3rd Cir. 4/1/09), 6 So. 3d 1021, 1025. Accordingly, because there is no indication that any existing claims remain outstanding, the August 29, 2018 judgment constitutes a valid final judgment, and this court has appellate jurisdiction to consider the merits of the landowners' appeal.

## LAW AND DISCUSSION

In seeking a permanent injunction against the landowners, the Council relied on La. R.S. 38:301(A)(3) and (4), which permits the District to construct bicycle paths and walkways along the top of the levees, and states that the permanent levee servitude granted to a levee and drainage board includes the construction of bicycle paths and walkways. The landowners excepted to the Council's claim, asserting that La. R.S. 38:301(A)(3) and (4) is unconstitutional and, as such, the Council did not have a right of action for a permanent injunction. The landowners allege that La. R.S. 38:301(A)(3) and (4) seeks to expand the permanent levee servitude for

---

[6] In fact, at the trial of the Council's request for a permanent injunction, counsel for the landowners specifically requested that, "[i]n the event that [the landowners] ever want to [seek compensation for their land], I'd like to specifically reserve that right." Counsel further stated, "ou[t] of an abundance of caution[,] I would like to reserve the right for them to seek compensation pursuant to [La. R.S.] 38:301...."

which land was appropriated by the District solely for levees and levee drainage purposes, and results in the taking of their property in violation of the Louisiana and United States Constitutions.

As stated by the Louisiana Supreme Court in **Carver v. Louisiana Dep't of Pub. Safety**, 2017-1340 (La. 1/30/18), 239 So. 3d 226, 230:

> All statutory enactments are presumed constitutional, and every presumption of law and fact must be indulged in favor of legality.... The presumption is especially forceful in the case of statutes enacted to promote a public purpose. The legislature is given great deference in the judicial determination of a statute's constitutionality, and legislators are presumed to have weighed the relevant constitutional considerations in enacting legislation. Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving it is unconstitutional. The burden ... in challenging the constitutionality of a statute is a heavy burden. It is not enough for a person challenging a statute to show that its constitutionality is fairly debatable; it must be shown clearly and convincingly that it was the constitutional aim to deny the legislature the power to enact the statute.

(Citations and footnotes omitted). Because the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the Legislature, the Legislature may enact any legislation that the constitution does not prohibit. **M.J. Farms, Ltd. v. Exxon Mobil Corp.**, 2007-2371 (La. 7/1/08), 998 So. 2d 16, 31, amended on reh'g (Sept. 19, 2008). The party challenging the constitutionality of a legislative enactment also must cite the particular constitutional provision that is alleged to limit the legislature's powers, and must clearly and convincingly demonstrate it was the constitutional aim of that provision to deny the Legislature the power to enact the statute in question. **Moore v. RLCC Techs., Inc.**, 95-2621 (La. 2/28/96), 668 So. 2d 1135, 1140; **M.J. Farms, Ltd.**, 998 So. 2d at 31. Because it is presumed the Legislature acts within its constitutional authority in enacting legislation, this court must construe a statute so as to preserve its

constitutionality when it is reasonable to do so. **M.J. Farms, Ltd.**, 998 So. 2d at 31.

Governmental takings of property are limited by both the federal and state constitutions. **South Lafourche Levee Dist. v. Jarreau**, 2016-0788, 2016-0904 (La. 3/31/17), 217 So. 3d 298, 305. The Fifth Amendment of the United States Constitution, made applicable to the states pursuant to the Fourteenth Amendment, provides: "No person shall ... be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation." Under the Louisiana Constitution of 1974, the only exception to the principle that private property may not be taken, except for public utility and with just compensation, is for "appropriation of property necessary for levee and levee drainage purposes." See A.N. Yiannopoulos and Ronald J. Scalise Jr., "The levee servitude," 4 La. Civ. L. Treatise, Predial Servitudes § 11:15 (4th ed.). This exception is found in 1974 La. Const. art. 6, §42—providing specifically for the appropriation of private property necessary for levee or levee drainage purposes— and arises from the particular nature of the levee servitude and the way in which it was traditionally exercised by public bodies. See **Magee v. W. Jefferson Levee Dist.**, 2017-294 (La. App. 5th Cir. 12/13/17), 235 So. 3d 1230, 1237.

Title to riparian lands fronting on navigable rivers is subject to the superior right of the public's legal servitude for the making and repairing of levees, roads, and other public or common works. La. C.C. art. 456;[7] **DeSambourg v. Board of Comm'rs for Grand Prairie Levee Dist.**, 621 So. 2d 602, 606 (La. 1993). Louisiana Civil Code article 665 describes this public, legal servitude:

> Servitudes imposed for the public or common utility relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers and for the making and repairing of levees, roads, and other public or common works.

---

[7] Louisiana Civil Code article 456 provides, in pertinent part, "[t]he banks of navigable rivers or streams are private things that are subject to public use."

9

\* \* \*

All that relates to this kind of servitude is determined by
laws or particular regulations.

The legal public servitude set forth in La. C.C. art. 665—also known as the permanent levee servitude, or levee servitude—has burdened riparian land ever since the land was first separated from the public domain and has been maintained through the transitions of the Civil Code since 1808. See **Dickson v. Board of Comm'rs of Caddo Levee Dist.**, 26 So. 2d 474, 478 (La. 1946); **DeSambourg**, 621 So. 2d at 607.

Riparian property subject to the levee servitude under La. C.C. art. 665 may be appropriated by the State. **Pillow v. Board of Comm'rs for Fifth Louisiana Levee Dist.**, 369 So. 2d 1172, 1177 (La. App. 2nd Cir.), writ denied, 373 So. 2d 525 (La. 1979). See also Yiannopoulos and Scalise, 4 La. Civ. L. Treatise, § 11:15. Appropriation, as opposed to expropriation, is carried out by a resolution of the appropriating authority, without the need for a judicial proceeding. **Magee**, 235 So. 3d at 1237. Thus, in the instant matter, the levee at issue is owned by the District, an agency of the State.[8] As owner of the levee, the District has authority to adopt lawful and reasonable resolutions concerning the use of the levee by the riparian landowners or the public. See La. R.S. 38:306(A) and La. R.S. 38:309(C). See also **Hathorn v. Board of Com'rs of Red River, Atchafalaya, Bayou Boeuf Levee Dist.**, 218 So. 2d 335 (La. App. 3rd Cir.), writ refused, 220 So. 2d 461 (La. 1969). The riparian land upon which the levee was constructed, however, is owned by the landowners while burdened with the permanent levee servitude pursuant to La. C.C. art. 665. The ownership of the riparian land remains with the landowners because the lands were not "expropriated," but merely "appropriated" by the District, which "involves the taking of a servitude." See A.N. Yiannopoulos

---

[8] As between the state and its agency, property is placed under the control of the agency for supervision and administration, the land to all practical intents and purposes being still the property of the state. **Bd. of Comm'rs of Orleans Levee Dist.**, 496 So. 2d at 288.

and Ronald J. Scalise Jr., "The levee servitude," 2 La. Civ. L. Treatise, Property § 5:8 (5th ed.). See also **South Lafourche Levee Dist.**, 217 So. 3d at 305.

Originally, the power of appropriation gave the State the right to use or destroy riparian property for levee purposes without paying compensation to the landowner. See **Dickson**, 26 So. 2d at 479. The Louisiana Constitution of 1921 later provided that compensation was due to property owners whose lands—excluding batture—and improvements were used or destroyed for levees or levee drainage purposes. **South Lafourche Levee Dist.**, 217 So. 3d at 308-09. Specifically, 1921 La. Const. art. 16, §6 provided that the appropriation of riparian property, subject to a permanent levee servitude pursuant to La. C.C. art. 665, "used or destroyed for levees or levee drainage purposes shall be paid for at a price not to exceed the assessed value for the preceding year...."

This right of appropriation of riparian property subject to a permanent levee servitude under La. C.C. art. 665 is now found in 1974 La. Const. art. 6, §42, which provides: "Notwithstanding any contrary provision of this constitution, lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law...." Additionally, 1974 La. Const. art. 14, §32 provides:

> The provisions of **Article [16], Section 6** of the Constitution of 1921 **shall be continued as a statute**, subject to change by the legislature, and the amount of compensation therein required to be paid for property used or destroyed for levee or levee drainage purposes shall be paid as provided in Section 6 of Article [16] of the Constitution of 1921 until the legislature enacts a law to effectuate Article [6], Section 42 of this constitution.

(Emphasis added).

In accordance with 1974 La. Const. art. 14, §32, the Legislature enacted La. R.S. 38:281. See 1978 La. Acts, No. 314, §1 (eff. July 10, 1978). Louisiana Revised Statutes 38:281(A) provided that levee boards and levee and drainage boards of this State may construct and maintain levees, drainage, and levee

drainage and do all other things incidental thereto. Additionally, La. R.S. 38:281(B) provided that all lands—exclusive of batture—and improvements hereafter actually taken, used, or destroyed for levees or levee drainage purposes shall be paid for at fair market value to the full extent of the loss. The legislature subsequently reenacted the contents of La. R.S. 38:281 as La. R.S. 38:301. See 1985 La. Acts, No. 785, §1 (eff. July 22, 1985).[9]

In 1999, the Legislature amended La. R.S. 38:301(A) to authorize levee boards and levee and drainage boards to construct bicycle paths and walkways along the tops of levees pursuant to the permanent levee servitude. As amended and reenacted, La. R.S. 38:301(A)(3) provided:

> Along the main line levees of the Mississippi river in Jefferson, St. Charles, and St. John parishes, levee boards and levee and drainage boards may construct bicycle paths and walkways along the top of the levees. The **legal servitude** granted to a levee board and a levee and drainage board pursuant to law **shall include the construction of bicycle paths and walkways along the top of levees** as provided in this Section.[10]

(Emphasis added). Additionally, the Legislature enacted La. R.S. 38:301(E) to provide for an exclusion from liability for the board and owners of property. See 1999 La. Acts, No. 1340, §1 (eff. Aug. 15, 1999).

In 2003, the Legislature amended La. R.S. 38:301(A)(3) to permit the levee boards and levee and drainage boards of West Baton Rouge Parish to construct bicycle paths and walkways along the top of levees. See 2003 La. Acts, No. 916 §1 (eff. Aug. 15, 2003). Then in 2010, the Legislature enacted La. R.S. 38:301(A)(4) to provide:

---

[9] See also **Terrebonne v. S. Lafourche Tidal Control Levee Dist.**, 445 So. 2d 1221, 1221 (La. 1984), and **DeSambourg**, 621 So. 2d at 608 n.14.

[10] Pursuant to the statutory revision authority of the Louisiana State Law Institute, in this section as amended in 1999, the existing first sentence of subsection A was designated as paragraph (A)(1), the existing second and third sentences were designated as paragraph (A)(2), and the sentences inserted by 1999 La. Acts, No. 1340, §1 (eff. Aug. 15, 1999), relating to bicycle paths, were designated as paragraph (A)(3). See Historical and Statutory Notes following La. R.S. 38:301.

> Levee boards or levee and drainage boards, or the governing authority where a levee district does not exist, **may allow the public to utilize for recreational purposes** as long as the structural integrity of the levee or flood control structure is not compromised, levees under the jurisdiction of the board, or by the governing authority where a levee district does not exist, and **may construct or permit bicycle paths and walkways.**

(Emphasis added). See 2010 La. Acts, No. 920, §1 (eff. Aug. 15, 2010).

Accordingly, the current version of La. R.S. 38:301(A)(3) and (4) provides:

> (3) Along the main line levees of the Mississippi River in Ascension, East Baton Rouge, Iberville, Jefferson, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John, and **West Baton Rouge parishes,** levee boards and levee and drainage boards, may construct bicycle paths and walkways along the top of the levees. The **legal servitude** granted to a levee board and a levee and drainage board pursuant to law **shall include the construction of bicycle paths and walkways along the top of levees as provided in this Section.**

> (4) Levee boards or levee and drainage boards, or the governing authority where a levee district does not exist, **may allow the public to utilize for recreational purposes** as long as the structural integrity of the levee or flood control structure is not compromised, levees under the jurisdiction of the board, or by the governing authority where a levee district does not exist, and **may construct or permit bicycle paths and walkways.**

(Emphasis added).

The "legal servitude" referenced in La. R.S. 38:301(A)(3) and (4) is the permanent levee servitude set forth by La. C.C. art. 665, which burdens all riparian land and permits the "making and repairing of levees, roads, **and other public or common works.**" (Emphasis added). The permanent levee servitude is an "ancient servitude" codified in La. C.C. art. 665 that has burdened riparian land ever since the land was first separated from the public domain and has been maintained through the transitions of the Civil Code since 1808. See **Deltic Farm & Timber Co., Inc. v. Bd. of Comm'rs for Fifth Louisiana Levee Dist.**, 368 So. 2d 1109, 1111 (La. App. 2nd Cir.), writ denied, 371 So. 2d 833 (La. 1979); **Dickson**, 26 So. 2d at 478 (La. 1946); **DeSambourg**, 621 So. 2d at 607.

13

Act 1340, which amended and reenacted La. R.S. 38:301(A)(3) to authorize levee boards to construct bicycle paths and walkways along the tops of levees pursuant to the permanent levee servitude, first appeared in 1999. See 1999 La. Acts, No. 1340, §1 (eff. Aug. 15, 1999). It does not appear that its constitutionality has ever been challenged.[11] West Baton Rouge Parish was added to the list of covered parishes in 2003. See 2003 La. Acts, No. 916 §1 (eff. Aug. 15, 2003). The authority for La. R.S. 38:301(A)(3) and (4) originates from 1974 La. Const. art. 14, §32, which provides for the levee boards to compensate landowners for property utilized for levee purposes.

Legal servitudes are limitations on ownership established by law for the benefit of the general public. La. C.C. art. 659. The permanent levee servitude burdening the landowners' property is not only a legal public servitude, but a predial servitude. See La. C.C. arts. 646 and 654.[12] The use and extent of servitudes, such as the permanent levee servitude, are regulated by the title by which they are created. See La. C.C. art. 697.[13]

---

[11] We note that a 2012 opinion of the Louisiana Attorney General ("AG") indicates that the constitutionality of 2001 La. Acts, No. 432, §1 (eff. June 15, 2001) was challenged in the Nineteenth Judicial District Court, in the matter of **Lambert v. Pontchartrain Levee Board, et. al**, Docket Number 501675. See **La. Att'y Gen. Op. No. 11-0200** (Jan. 23, 2012), 2012 WL 529142, at *2 n.2. Specifically, Act 432 amended and reenacted La. R.S. 38:301(A)(3) to add Orleans Parish to the list of covered parishes in 2001. The AG's opinion indicates that on July 2, 2007, the trial court declared Act 432 constitutional. The AG's opinion further states:

> La. R.S. 38:301 has been amended several times since Act 432 to include other parishes and other language; however, the original language in subsection (A)(3), allowing political subdivisions to construct bicycle paths and walkways within existing levee servitudes along the Mississippi River, has never been amended.

There appears to have been no challenge to the trial court's decision in the **Lambert** matter regarding the constitutionality of Act 432. See **AG Op. No. 11-0200**, 2012 WL 529142 at *2 n.2.

[12] Louisiana Civil Code article 646 provides that "[a] predial servitude is a charge on a servient estate for the benefit of a dominant estate." Additionally, "[p]redial servitudes may be natural, legal, and voluntary or conventional.... [L]egal servitudes are imposed by law." La. C.C. art. 654. In the instant matter, the political subdivision, *i.e.*, the District, is the dominant estate, who holds the levee servitude for the construction, operation, and maintenance of a levee.

[13] Article 697 provides in relevant part: "The use and extent of such servitudes are regulated by the title by which they are created, and, in the absence of such regulation, by the following rules."

The legal servitude at issue was appropriated through the September 2, 1931 Resolution, which vested the District with the right to use the lands within the territorial limits of the Atchafalaya Basin Levee District "for use for levee purposes along the Mississippi River." Any limitations on the use of the appropriated land by either the owner or the appropriating authority must be expressed, and in this case, the expression would necessarily have been in the 1931 Resolution. See, e.g., **S. Lafourche Levee Dist. v. Jarreau**, 2015-0328 (La. App. 1st Cir. 3/30/16), 192 So. 3d 214, 230, writs granted, 2016-0788, 2016-00904 (La. 9/6/16), 204 So. 3d 919, 998, aff'd in part, rev'd in part (on other grounds), 2016-0788, 2016-0904 (La. 3/31/17), 217 So. 3d 298. A review of the Resolution reveals that no provision limited the District's use of the appropriated riparian land.

In the absence of a limiting regulation by title, La. C.C. art. 665 provides that "[a]ll that relates to this kind of servitude is determined by laws or particular regulations." Louisiana Revised Statutes 38:301 sets forth the law governing levee servitudes along the Mississippi River in West Baton Rouge Parish and clearly states that West Baton Rouge Parish may construct bicycle paths and walkways along the top of the levees in accordance with the permanent levee servitude. Therefore, since no other provision in the levee servitude articles indicate otherwise, La. R.S. 38:301 governs the instant matter and permits West Baton Rouge Parish to construct bicycle paths and walkways along the top of levees and allows the public to utilize the levee for recreational purposes.

Accordingly, La. R.S. 38:301(A)(3) and (4) do not impermissibly expand the permanent levee servitude nor do these provisions create any additional servitude. The statute merely provides that the La. C.C. art. 665 permanent levee servitude "shall include the construction of bicycle paths and walkways along the top of levees." Louisiana Revised Statutes 38:301 is neutral regarding the public's use of levees for recreational purposes and the construction of bicycle paths or walkways

15

on levees. The statute specifically does not encourage or require such use or construction. As provided in La. R.S. 38:301(F):

> Nothing in this Section shall be interpreted to either encourage or require a levee district ... to allow the public to utilize for recreational purposes levees under the jurisdiction of the board ... nor shall the provisions of this Section be interpreted to encourage or require a levee district ... to construct, or allow to be constructed, bicycle paths or walkways on the levees.

Additionally, La. R.S. 38:301 provides immunity to a riparian landowner from liability for personal injury, property damage, or other loss to individuals occurring while a person enters onto such property for recreational purposes. As set forth in La. R.S. 38:301(E)(1):

> Neither a levee board nor a levee and drainage board ... that constructs or permits a bicycle path or walkway or allows the use for recreational purposes, ... nor the owner, operator, or lessee of property utilized for levee and levee drainage purposes nor the state shall be liable for any personal injury, property damage, or other loss which occurs while a person enters onto such property for recreational purposes...

Also, La. R.S. 38:301 does not restrict a riparian landowner from "the normal, reasonable, and foreseeable use of levee property upon which a bicycle path or walkway is constructed." La. R.S. 38:301(E)(2). Finally, La. R.S. 38:301(E)(3) provides that "[n]othing contained in this Section shall be construed to prevent any landowner from seeking compensation under existing law for use of such landowner's property pursuant to this Section."[14]

For the foregoing reasons, we find that La. R.S. 38:301(A)(3) and (4) are constitutional and do not result in a taking of the landowners' property in violation of the Louisiana or United States Constitutions.

---

[14] The August 29, 2018 judgment specifically reserved the right of the landowners to seek compensation under La. R.S. 38:301.

16

## DECREE

We affirm the trial court's June 20, 2018 judgment that denied the defendant landowners' peremptory exception raising the objection of no right of action. Additionally, we affirm the trial court's August 29, 2018 judgment that granted a permanent injunction in favor of the plaintiff, West Baton Rouge Parish Council. All costs of this appeal, in the amount of $3,511.00, are assessed to the defendant landowners—Joseph Gordon Tullier, Sr., Rae Q. Tullier, Barton James Tullier, and Phillip John Debenedetto.

**JUDGMENTS AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CICRUIT

NUMBER 2018 CA 1722

WEST BATON ROUGE PARISH COUNCIL

VERSUS

JOSEPH GORDON TULLIER, SR., RAE Q. TULLIER,
BARTON JAMES TULLIER, AND PHILLIP JOHN DEBENEDETTO

**GUIDRY, J. dissents in part and assigns reasons.**

**GUIDRY, J., dissenting in part.**

I respectfully disagree with the portion of the majority's decision affirming

the trial court's judgment denying the defendants' exception raising the objection

of no right of action and granting a permanent injunction in favor of the West

Baton Rouge Parish Council.

In Louisiana, title to riparian lands fronting on navigable rivers is subject to

the superior right of the public's legal servitude for the making and repairing of

levees, roads, and other public or common works. DeSambourg v. Board of

Commissioners for the Grand Prairie Levee District, 621 So. 2d 602, 606 (La.

1993). Louisiana Civil Code article 665 specifically provides, in part:

> Servitudes imposed for the public or common utility relate to
> the space which is to be left for the public use by the adjacent
> proprietors on the shores of navigable rivers and for the making and
> repairing of levees, roads, and other pubic or common works.
> * * *
> All that relates to this kind of servitude is determined by laws or
> particular regulations.

This legal servitude has burdened riparian land ever since the land was first

separated from the public domain and has been maintained through the transitions

of the Civil Code since 1808. See Dickson v. Board of Commissioners of Caddo

1

Levee District, 210 La. 121, 131-132 (La. 1946), 26 So. 2d 474, 478; DeSambourg, 621 So. 2d at 606.

Riparian property subject to a servitude under La. C.C. art. 665, which is used or destroyed for levee or levee drainage purposes, may be appropriated by the state as opposed to expropriated. Pillow v. Board of commissioners for Fifth Louisiana Levee District, 369 So. 2d 1172, 1177 (La. App. 3rd Cir.), writ denied, 373 So. 2d 525 (1979); see also 4 La. Civ. L. Treatise, Predial Servitudes §11:15 (4th ed). Originally, the power of appropriation gave the State the right to use or destroy riparian property for levee purposes without paying compensation to the landowner. See Dickson, 210 La. at 133-135, 26 So. 2d at 479. It was not until the Louisiana Constitution of 1921 that compensation was provided on a statewide basis to property owners whose lands, excluding batture, and improvements were used or destroyed for levee or levee drainage purposes. South Lafourche Levee District v. Jarreau, 16-0788, p. 15 (La. 3/31/17), 217 So. 3d 298, 308-309.

Specifically, Article 16, Section 6 of the Louisiana Constitution of 1921 provided for appropriation of private property, providing that "[l]ands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for at a price not to exceed the assessed value for the preceding year." This right of appropriation is now found in Article VI, Section 42 of the Louisiana Constitution of 1974, which provides that "lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law." See Magee v. West Jefferson Levee District, 17-294, p. 7 (La. App. 5th Cir. 12/13/17), 235 So. 3d 1230, 1237. Article 14, Section 32 of the Louisiana Constitution of 1974 provides that Article 16, Section 6 of the Louisiana Constitution of 1921 shall be continued as a statute and the amount of compensation required to be paid for property used or destroyed for levee or levee drainage purposes shall be paid as provided in La.

2

Const. Art. 16, §6 of the Constitution of 1921 until the legislature enacts a law to effectuate Article 6, Section 42 of the Constitution of 1974.

The Louisiana legislature thereafter enacted La. R.S. 38:281, which provided that levee boards and levee and drainage boards of this state may construct and maintain levees, drainage, and levee drainage and do all other things incidental thereto. See La. R.S. 38:281(A). Additionally, 38:281(C)(1)(a) provided that all lands, exclusive of batture, and improvements hereafter actually taken, used, or destroyed for levee or levee drainage purposes shall be paid for at fair market value to the full extent of the loss. See La. Acts 1978, No. 314. The contents of La. R.S. 38:281 were subsequently reenacted as La. R.S. 38:301.[1] In 1999, the legislature reenacted La. R.S. 38:301(A) and enacted La. R.S. 38:301(E) relative to levee boards and levee and drainage boards to authorize such boards to construct bicycle paths and walkways along tops of levees relative to certain servitudes and to provide for an exclusion from liability for the board and owners of property. See La. Acts. 1999, No. 1340. Specifically, La. R.S. 38:301(A) was reenacted to provide:

> (3) Along the main line levees of the Mississippi river in Jefferson, St. Charles, and St. John parishes, levee boards and levee and drainage boards may construct bicycle paths and walkways along the top of the levees. The legal servitude granted to a levee board and a levee and drainage board pursuant to law shall include the construction of bicycle paths and walkways along the top of levees as provided in this Section.[2]

Louisiana Revised Statute 38:301(A)(3) was amended in 2002 to add West Baton Rouge Parish. See La. Acts 2003, No. 916. Louisiana R.S. 38:301(A)(4) was subsequently enacted in 2010 to provide:

---

[1] See La. Acts 1985, No. 785; see also DeSambourg, 621 So. 2d at 608 n.14.

[2] Pursuant to the statutory revision authority of the Louisiana State Law Institute, in this section as amended in 1999, the existing first sentence of subsection A was designated as paragraph (A)(1), the existing second and third sentences were designated as paragraph (A)(2), and the sentences inserted by Acts 1999, No. 1340, relating to bicycle paths, were designated as paragraph (A)(3). See Historical and Statutory Notes following La. R.S. 38:301.

3

Levee boards or levee and drainage boards, or the governing authority where a levee district does not exist, may allow the public to utilize for recreational purposes as long the structural integrity of the levee or flood control structure is not compromised, levees under the jurisdiction of the board, or by the governing authority where a levee district does not exist, and may construct or permit bicycle paths and walkways.

As such, La. R.S. 38:301(A)(3)-(4) currently provides:

(3) Along the main line levees of the Mississippi River in Ascension, East Baton Rouge, Iberville, Jefferson, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John, and West Baton Rouge parishes, levee boards and levee and drainage boards may construct bicycle paths and walkways along the top of the levees. The legal servitude granted to a levee board and a levee and drainage board pursuant to law shall include the construction of bicycle paths and walkways along the top of levees as provided in this Section.

(4) Levee boards or levee and drainage boards, or the governing authority where a levee district does not exist, may allow the public to utilize for recreational purposes as long as the structural integrity of the levee or flood control structure is not compromised, levees under the jurisdiction of the board, or by the governing authority where a levee district does not exist, and may construct or permit bicycle paths and walkways.

See La. Acts 2010, No. 920.

In the instant case, in seeking a permanent injunction against the landowners, the Council relied solely on the foregoing language found in La. R.S. 38:301(A)(3) and (4), permitting the District to construct bicycle paths and walkways along the top of the levees and stating that the legal servitude granted to a levee and drainage board pursuant to law shall include the construction of such bicycle paths and walkways. The landowners excepted to the Council's claim, asserting that these provisions are unconstitutional and as such, the Council did not have a right of action for a permanent injunction. In particular, the landowners asserted that these provisions seek to expand the existing servitude, for which land was appropriated by the District solely for levee purposes, and results in the taking of property in violation of the Louisiana and United States Constitutions.

4

Statutes are presumed constitutional, and the party challenging the statute bears the burden of proving its unconstitutionality. Wooley v. State Farm Fire and Casualty Insurance Company, 04-0882, p. 19 (La. 1/19/05), 893 So. 2d 746, 762. A party seeking the declaration of unconstitutionality must show clearly and convincingly that it was the constitutional aim to deny the legislature the power to enact the statute in question. Fransen v. City of New Orleans, 08-0076, p. 11 (La. 7/1/08), 988 So. 2d 225, 234. However, a constitutional limitation of power may be either express or implied. Fransen, 08-0076 at p. 11, 988 So. 2d at 234. When a constitutional challenge is made, the question is whether the constitution limits the legislature, either expressly or impliedly, from enacting the statute at issue. Fransen, 08-0076 at p. 11, 988 So. 2d at 234. The constitution is the supreme law, to which all legislative acts must yield. World Trade Center Taxing District v. All Taxpayers, Property Owners, 05-0374, p. 12 (La. 6/29/05), 908 So. 2d 623, 632. When a statute conflicts with a constitutional provision, the statute must fall. Fransen, 08-0076 at p. 11, 988 So. 2d at 234.

Louisiana Revised Statute 38:301, as originally enacted, implemented the above-detailed constitutional directive for setting forth the amount of compensation to be paid for the appropriation of land used or destroyed for levees or levee drainage purposes. See Magee, 17-294 at p. 9, 235 So. 3d at 1238. However, beginning in 1999, the legislature amended La. R.S. 38:301 to include provisions permitting the construction and public use of bicycle paths and walkways along the top of levees and providing that the legal servitude granted to a levee board and a levee and drainage board pursuant to law shall include construction of such paths and walkways.

Governmental takings of property are limited by both the federal and state constitutions. South Lafourche Levee District, 16-788 at p. 8, 217 So. 3d at 305. The Fifth Amendment of the United States Constitution, made applicable to the

5

states pursuant to the Fourteenth Amendment, provides: "No person shall ... be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation." Under the Louisiana Constitution of 1974, the only exception to the principle that property may not be taken except for public utility and with just compensation is for appropriation of property necessary for levees and levee drainage purposes." See 4 La. Civ. L. Treatise, Predial Servitudes §11:15 (4th ed.). This exception arises from the particular nature of the levee servitude and the way in which it was traditionally exercised by public bodies. Magee, 17-294 at p. 8, 235 So. 3d at 1237.

A review of the history of the articles of the Louisiana Constitutions of 1921 and 1974 at issue evidences that the subject and purpose of these articles has consistently been to not only provide for appropriation of private property for public purposes when lands and improvements thereon hereafter are actually *used or destroyed for levees or levee drainage purposes* but also, to provide compensation for such appropriation. Article 16, Section 6 of the Louisiana Constitution of 1921 provided compensation for the first time on a state-wide basis to landowners whose lands and improvements were used or destroyed for levee or levee drainage purposes and set the compensation at "a price not to exceed the assessed value of the preceding year." See Dickson v. Board of Commissioners of Caddo Levee District, 210 La. 121, 135 (1946), 26 So. 2d 474, 479; see also 4 La. Civ. L. Treatise, Predial Servitudes § 11:15 (4th ed.). Article 6, Section 42 and Article 14, Section 32 of the Louisiana Constitution of 1974, entitled "Compensation for Property Used or Destroyed; Tax" and "Levee Districts; Compensation for Property, respectively" continue the prior constitution's provision for compensation for appropriation of property used or destroyed for levees or levee drainage purposes. However, unlike the Article XVI, Section 6 of the Louisiana Constitution of 1921, the provisions of the Louisiana Constitution of

6

1974 did not set forth the amount of compensation to be paid for such appropriation. Rather, La. Const. Art. 14, §32 directed the legislature to enact a law to effectuate Article 6, Section 42 of the Louisiana Constitution of 1974, i.e., to set the amount of compensation to be paid for such appropriation. See Magee, 17-294 at p. 9, 235 So. 3d at 1238.

When the legislature enacted La. R.S. 38:281 in 1978, it set the measure of compensation for lands and improvements used, damaged, or destroyed for levees or levee drainage purposes as the fair market value of the property taken or destroyed. See 1978 La. Acts. No. 314. However, beginning in 1999, the legislature expanded now La. R.S. 38:301, going beyond the constitutional directive of setting forth the measure of compensation for appropriation of property for levees and levee drainage purposes and legislatively expanding the use of property for which appropriation is constitutionally permitted. By providing that land appropriated for levees and levee drainage purposes may be used for building bicycle paths and walkways, which are purely recreational purposes, the legislature has expanded the constitutional right of appropriation to include uses other than levees and levee drainage. This unlawful expansion results in a taking of property in violation of the Fifth Amendment to the United States Constitution. See Gravolet v. Board of Commissioners for Grand Prairie Levee District, 598 So. 2d 1231, 1236 (finding the levee district was only entitled to use property appropriated for levee purposes without further compensation owed to the landowner if the new use is for levee purposes, and because the levee district did not use the appropriated land for levee purposes, the landowner was entitled to just compensation for the expropriation of their property by the levee district).

Accordingly, because the legislature unlawfully expanded the constitutional right of appropriation and exceeded the constitutional direction found in Article 6, Section 32 of the Louisiana Constitution of 1974, limiting the legislature to

7

enacting a statute specifically to set forth the amount of compensation for lands used or destroyed for levees or levee drainage purposes, La. R.S. 38:301(A)(3) and (4) are unconstitutional.

Further, because La. R.S. 38:301(A)(3) and (4) are unconstitutional, the Council does not have a right of action pursuant to these provisions to seek a permanent injunction against the landowners. Accordingly, I respectfully dissent from the majority's decision affirming the trial court's judgment granting a permanent injunction in favor of the West Baton Rouge Parish Council and affirming the trial court's judgment denying the defendants' peremptory exception raising the objection of no right of action.